### BUCKBEE *vs.* BROWN.

A *wharfinger* or *dock master* cannot maintain an action, *in his own name*, for the recovery of *money due for dockage* or wharfage, from the owner of a vessel frequenting the port of which he is wharfinger, although by the ordinances and statutes under which he acts the dockage and wharfage is *directed to be paid to him*, and he is *required to collect the same.*

Remedies must be pursued *in the name of the party in interest*, and not *in the name of the agent* who made the contract, or whose duty it is to make the collection of moneys accruing under such contract. It is otherwise as to *bailees*; in whose names, in many cases, actions may be maintained.

In an action for dockage and wharfage of a public port, the defendant by way of *recoupment* may show that the port and wharves, during the accruing of toll, were out of repair, whereby he sustained damage, &c.

ERROR from the Albany mayor's court. *Brown* brought an action of *debt* against *Buckbee* for $61 70, the *dockage* and *wharfage* of a sloop of which the defendant was the owner and master, claimed by the plaintiff as *dock master* of the port of Albany. The plaintiff in his declaration set forth an *ordinance* of the corporation fixing the rates of dockage and wharfage, and upon vessels coming to or lying at or within the docks, wharves or slips of the port, and *directing the same to be paid to the dock master*. He also set forth an act of the legislature, passed 5th April, 1823, authorizing the construction of a *mole* or *pier* opposite the docks fronting the Hudson river so as to form a basin, fixing the rates of *wharfage* to be paid by the owners or masters of vessels entering the basin, and directing the same *to be collected by the wharfinger* or *dock master*, in the manner then prescribed by law, and *after deducting such sum* as should be agreed upon for his services, to *pay over* one half of the residue to the proprietors of the pier. He then averred that he was duly appointed *dock master* in 1823, and has ever since continued to hold such office ; that at divers days and times between 1st January, 1836, and 31st December, 1837, the sloop *Ambrose Spencer Townsend,* of which the defendant was the owner and master, came to and laid at or within the said docks, wharves or slips, and was liable to pay dockage and

Buckbee v. Brown.

wharfage. By means whereof the defendant *became liable to pay to the plaintiff, as such dock-master* several large sums of money, amounting in the whole to $61 70, for two years' dockage add wharfage of the said sloop, whereby an action had *accrued to the plaintiff*, &c. The declaration contained also a more general count, and an *insimul computasset*. The defendant pleaded the general issue, and subjoined a notice of special matter to be given in evidence on the trial. On the trial of the cause, the act of the legislature and the ordinance of the corporation were read in evidence, and an admission of the defendant was proved, that there was due from him *to the plaintiff, as dock master*, the sum claimed for wharfage and dockage, if any thing was due to the plaintiff; but that he and others had determined not to pay, as they intended to raise a legal objection. It was admitted that during the years 1836 and 1837 the plaintiff was *dock master*. The defendant's counsel insisted that the plaintiff was not entitled to maintain an action *in his own name* for the dockage and wharfage; which objection was overruled by the recorder. The defendant then offered to prove, in pursuance of his notice, that during the years 1836 and 1837, the *basin* was so filled up that a vessel could not pass through it so as to unlade at the wharves on the main shore but with great difficulty and delay, and that his vessel was in that way greatly impeded and delayed; and also that he was bound to deliver his cargoes at the wharves on the main shore, and that the state of the wharves was such that his vessel could not be unloaded thereat, without erecting a temporary dock or platform for that purpose: this evidence being objected to, was excluded by the recorder, and the jury, under his direction, found a verdict for the plaintiff for $67 49, on which judgment was entered. The defendant having excepted to the decisions of the recorder, sued out a writ of error.

*S. Stevens*, for the plaintiff in error.

*A. Taber*, for the defendant in error.

*By the Court*, COWEN, J. Independent of the statute direction, that the dock master, &c. shall collect, the exclusive legal interest, if not in the docks and wharves in question, at least in the tolls arising from their occupation, would reside in the corporation of Albany, and the remedy for collection could be only in the name of the corporation. The relation between the corporation and occupant is precisely that of landlord and tenant, the latter entering under and being estopped to question their interest. The wharfage and dockage are a rent, for which the law allows the same concurrent remedies, by action and distress, as in the common case of landlord and tenant. Bradby on Distresses, 191, 193, and the cases there cited. Remedies, whether by action or distress, must be pursued in the name of the party in interest, and not in the name of the agent who made the contract or one who is appointed to make the collection or do both. The agent stands in the name and place of the principal, and in legal effect it is the same as if the principal had acted throughout in person. Ham. on Parties, 4, 29. 1 Chit. Pl. 2, 3, ed. of 1828.

The general doctrine is extremely well settled; and *Piggot* v. *Thompson*, 3 Bos. & Pull. 147, furnishes an illustration quite apposite in its circumstances, and we think precisely so in its principle. Commissioners were appointed by act of parliament, to drain certain fen lands, in whom and their successors certain tolls were vested. The commissioners let the tolls to the defendant for three years, by a written agreement, whereby he acknowledged to have hired the tolls at so much per annum, "to be paid to the treasurer of the commissioners at his house in Ely." The treasurer was appointed pursuant to the act of parliament, with an annual salary. The plaintiff held the office, and the defendant continued to receive the tolls, and made partial payments of the rent to the plaintiff during the three years; and the action was brought for the balance. It was held that the action would not lie. Eyre, Ch. J. said the instrument did not operate as a promise to pay the treasurer for the the time being, as the counsel for the plaintiff had supposed. If the plaintiff had been removed from office, a pay-

Buckbee v. Brown.

ment to him would not have availed the defendant. The manifest intention of the agreement was, that the defendant should pay the money to any person whom the commissioners should choose to make their treasurer for the time being; but by law a debt is not so assignable." Heath, J. said, " It appears to me that the appointment to pay the treasurer, was meant for the benefit of the commissioners; and they alone can sustain the action." Rooke, J. said, " I think the contract was made with the commissioners." Chambre, J. said, " The contract is to pay the commissioners through the medium of their officer." The same principles, in a case quite similar, were acted upon by the exchequer chamber in *Bowen* v. *Morris*, 2 Taunt. 374.

In the case at bar, the city corporation must be taken to have been the proprietor of the ground which the defendant occupied, the contract was made with their dock master, and the rent payable to him. So far this case is precisely parallel with *Piggot* v. *Thompson*. The declaration in the statute that the toll " shall be collected by the wharfinger or dock master, in the manner now prescribed by law," certainly meant no more than an express stipulation in writing would, to pay to one of those agents. Suppose he had been removed, payment might have been made to his successor, or any other agent appointed by the corporation to receive it. In short, the dock master or wharfinger, or other person so appointed, would be the naked agent to contract, receive and pay over as directed by the statute. It would be a most singular anomaly were the promise or right of action to run from one agent to another, upon the mere declaration of the statute recognizing such a power to collect as the corporation might themselves have conferred, and such as they had probably been in the habit of conferring on some agent. To that probably the statute refers. He is to collect as he may now do by law. The statute could mean no more than that he might collect as agent, unless he had been before armed with some peculiar power. Nothing of that kind appears. The legislature might, by a very short clause, have conferred power to sue in his own name as they frequently do in express terms on over-

seers of the poor and others. But they have not done
it. They have avoided the ordinary words used to confer
such an artificial remedy.

But the counsel for the defendant in error seeks to dis-
tinguish the case by the provision that, after collection, the
agent shall deduct the amount of his compensation as agreed
on between him and the corporation, and pay one half the
balance to the pier proprietors, and one half to the corpora-
tion. It is supposed that this raises such an interest by way
of trust and lien for wages upon the fund, as takes the case
out of the general rule. I do not collect from the bill of
exceptions that any sum had been agreed on to be taken
from the fund in the hands of the plaintiff below. But if
otherwise, that was but a mode of compensation, which the
corporation might have revoked by his removal; and made
payment to him in another form, if any money had been
due. Nor was the mere direction to pay over, any thing
beyond what the agent might have done without. It was
but another form of declaring that the pier proprietors, in
consideration of the value which their pier had superadded
to the city docks and wharves, should have one half the
toll which had been doubled in consequence. The author-
ity to pay over in the mode mentioned, would have resulted
from the declaration of the same right in any other form.
The agent who might get the money would but be doing
justice by such an act; and should he pay the whole to his
principal, the corporation, the latter would be liable to an
action for the shares of the pier owners, if withheld on de-
mand. The statute was but directory as to the mode of
doing the business by the agent. It raised in him no great-
er interest, and no trust beyond what would have resulted
from the legal character of his agency, independent of the
statute.

It is not necessary to deny that an *express contract* to
pay A. for the use of B. on a consideration moving from
B., will raise such a legal interest by way of trust as will
maintain an action in A.'s name, though even that has been
doubted, as will be seen by what Eyre, Ch. J. said in *Pig-
got v. Thompson.* Nor is it necessary to deny the right of

factors, commission merchants, carriers, auctioneers, masters of vessels, &c., to maintain actions either for tortiously interfering with their possession, or to recover prices, or for moneys falling due to them in various ways in respect to their interest, duties, liens or liabilities. They are bailees, and have a special property. Their right to sue in their own names will be found to arise mainly out of their legal interest. They are not naked agents. A factor or broker selling goods under a *del credere* commission, is a *quasi* owner. Neither the principal nor purchaser ordinarily thinks of looking beyond him. *Morris* v. *Cleasby*, 1 Maul. & Selw. 576, 580. *Sadler* v. *Leigh*, 4 Camp. 195. An auctioneer sold the goods on the premises of his principal; the purchaser by a trick got them away without payment. The auctioneer paid the price to his principal, and sued the purchaser in his own name for goods sold, and the action was held to lie. Lord Loughborough gave the reason, " that an auctioneer has a possession coupled with an interest in goods which he is employed to sell ; not a bare custody like a servant or shop-man." Heath, J. added, if they should be stolen he might maintain trespass. Wilson, J. added another ground, that of estoppel ; the defendant having bought of the plaintiff who had the custody, should not gainsay his right to recover as vendor. *Williams* v. *Millington*, 1 H. Bl. R. 81. See also *Coppin* v. *Walker*, 2 Marsh. 497, 500, 1. 7 Taunt. 237, 240, *S. C.* Similar reasons will be found to run through those cases where actions have been sustained by the various bailees I have mentioned. A master has a special property in the vessel, and may, therefore, declare for the freight of goods as carried in *his* vessel, though he be not the owner. *Shields* v. *Davis*, 6 Taunt. 65. Another instance is *Atkyns* v. *Amber*, 2 Esp. R. 493, to which the counsel for the defendant in error especially referred us on the argument. Indeed the plaintiff there was a pledgee of the goods, which he had sold as such, and was suing for the price. See *Brown* v. *Hodgson*, 4 Taunt. 188, as to a carrier. A broker in a matter of insurance, especially if he act under a *del credere* commission, is also regarded as principal, and may sue or be sued

in his own name. *Grove* v. *Dubois*, 1 T. R. 112. This case is treated by a learned writer as an exception implied from the course of trade. Ham. on Parties, 11. If they have no commission *del credere*, they may maintain an action in respect to their lien, if the contract be made in their own names, though on account of their principals. *Parker* v. *Beasley*, 2 Maul. & Selw. 423. In this case they claimed by virtue of a policy running to them, by name, on account of their principals. Bayley, J. said, that " by suffering their names to be inserted in the policies, the underwriter has agreed that they shall be considered as principals, *if they have an interest.*"

On the whole, it is enough to see that the case before us has not been brought within any of the peculiar reasons on which exceptions to the general rule have been allowed. To sustain this action would be to authorize a suit in the name of any ordinary agent for the management of an estate, instead of requiring it to be brought in the name of the proprietor. It makes no difference that part of the accruing rents are, when collected, to be paid over to another. This is not an assignment of so much. The corporation must sue or distrain in its own name, accounting through its agents to the pier owners. It holds the entire legal estate in the tolls ; one half in its own right, and the other as a trustee for the pier owners, after defraying the immediate expenses of the management and collection.

An ulterior point has been made, and arises on the bill of exceptions, which we need not consider particularly, because the judgment must be reversed on the mistake of the name. Looking at what was offered in the court below, and taking it for true, it seems that the corporation are claiming full toll without keeping the docks in repair. It can hardly be that the statute intended so unreasonable a thing as that a man should pay full dockage by the season, without the docks being kept in good condition. " The owners of a public port are of common right bound to keep it in repair, for the neglect of which they are liable to an indictment." Bradby on Distresses, 191. They are under an implied obligation to repair, and this is a consideration

for the toll. Id. The corporation laboring under such obligation in respect to their docks, would doubtless be liable for special damage, arising to individuals from its violation; and there cannot be any good reason, that I see, against recoupment in an action for the rent to the extent of such damage. The offer of proof also extended to foulness of the basin, which very likely was well founded, from what I heard of it in April, 1837, upon a dispute between the state and the pier owners. *Ex parte Smith*, 18 Wendell, 659. I felt very little doubt then, and feel very little now, that ths corporation are bound to keep the basin in repair, with the exception of certain specific parts assigned by statute to the pier company, which were noticed in that case; and see *Alb. Corp.* v. *The People*, 11 Wendell, 539, Nelson, J.

The judgment of the mayor's court, however, must be reversed on the first point; *venire de novo* from court below.