AMBROSE A. WHITE and FRANCIS U. ELDER *v.* HENRY CHOUTEAU and NEREE VALLE.

Statements of facts, made by a deceased person in his lifetime, at variance with his interest, of which facts he must (if true) have had personal knowledge, and in respect of which he could, if living, have been examined as a witness; are, if pertinent to the matter of inquiry, admissible in evidence, as between third persons, whether made at the time the facts occurred, or afterwards. *Per* DALY, J.; INGRAHAM, FIRST J., dissenting.

And therefore, in an action by a broker for the recovery of the price of goods claimed to have been purchased and paid for by the plaintiffs, and delivered to the defendants, the declaration of the former owner, (who died before the trial,) that he had received payment for the goods from the plaintiffs, is competent evidence for the plaintiffs.

Where the defendants, after negotiating, for the purchase of some indigo, with the owner personally, and with the plaintiffs, who were merchandize brokers, finally agreed with the plaintiffs to take the same at a price concluded upon with them; it was *held,* that the plaintiffs, having obtained the indigo from the owner, and having advanced the price thereof to him, and subsequently delivered the article to the defendant, could maintain an action against the latter, in their own name, for the price. *Per* DALY, J.

An action having been tried in this court, at a time when a writ of error lay to the supreme court, and the judgment having been reversed; it was deemed proper, on the second trial here, to be governed, for the purposes of this case, by the views under which the supreme court acted in such reversal, notwithstanding that this court and the supreme court, at the time of the second trial, had, by a change in our judicial system, been made of co-ordinate jurisdiction. *Per* WOODRUFF, J.

THE plaintiffs in this case were merchandise brokers in the city of Baltimore. The defendants resided in St. Louis; and one of them (Chouteau) being temporarily in Baltimore, called at the plaintiffs' counting room. Being shown a sample of indigo, which the plaintiffs stated that they wished to sell, the parties went to the store of Wirgman, a commission merchant, where the article was, and there met one Tully, of Philadelphia, who was the owner. An offer, which Tully declined, was made by Chouteau, who then took a sample and returned to the plaintiffs' office, where Chouteau made another offer, and requested the plaintiffs to obtain Tully's reply thereto.

This offer being accepted, the plaintiffs obtained and shipped to the defendants, at St. Louis, two ceroons of indigo. The plaintiffs alleged that they advanced to Tully the price. This suit was brought by them to recover the said price and their commissions upon the sale.

The cause was first tried before Judge ULSHOEFFER, and resulted in a judgment of nonsuit, which was affirmed at a general term. A writ of error was taken, and the cause carried to the supreme court, which was then empowered to review the decisions of this court. The judgment was there reversed, and a new trial ordered.

Upon a new trial, the plaintiffs recovered judgment, and the defendants brought this appeal to the general term.

Before the second trial, however, a change was made by law in our judicial system, by which the court of common pleas became a court of co-ordinate jurisdiction with the supreme court; and it was provided that the decisions of both courts should be reviewed by an appeal taken directly to the court of appeals.

One of the exceptions relied upon by the defendants was to the admission in evidence (to prove the plaintiffs' alleged advance to Tully of the price of the indigo) of a draft drawn by Tully, to the order of Wirgman, addressed to the plaintiffs, and paid by them, dated about the time of the transactions testified to in the suit; and also declarations of Tully, introduced for the same purpose—he being deceased.

This and other points are fully discussed, and additional facts stated, by DALY, J.

*A. H. Dana*, for the defendants.

*A. D. Logan*, for the plaintiffs.

BY THE COURT. DALY, J.—If the plaintiffs, when the indigo was delivered to them, made advances upon it to Tully, they acquired thereby a special interest in the property, and by the subsequent delivery of it to the defendants, according

to the terms upon which Chouteau offered to purchase it, they became entitled to maintain an action against the defendants for the price. No contract was made by Chouteau with Tully. He and Gay called at the plaintiffs' counting room, and Chouteau, according to the witness, Maguire, inquired for indigo, or, as Gay relates it, they were shown a sample of indigo, which the plaintiffs offered for sale. The plaintiffs said the owners were anxious to sell, and proposed to show them the articles, in ceroons. One of the plaintiffs then took them into Wirgman's store, next door, where the indigo was, and they examined it, Tully being present. Chouteau asked Tully if he would warrant it, which he declined to do ; and Chouteau and Gay then offered eighty cents a pound, which Tully refused to take, and they returned again to the plaintiffs' counting room, Chouteau taking a sample of the indigo with him, when he, Gay, and one of the plaintiffs examined it more particularly. The plaintiff, Elder, pronounced a part of it spurious; and Chouteau remarked that he would, nevertheless, give ninety cents a pound for it. The ninety cents, according to Gay's testimony, was not accepted when first offered; but upon a subsequent interview, Mr. White, according to the witnesses' belief, agreed to accept the offer. Maguire's testimony is, that Chouteau requested the plaintiff, Elder, to communicate his offer to Tully, which was done, and Tully agreed to sell at that price. Gay further says, that he and Chouteau concluded to offer ninety cents per pound for the four ceroons, and divide them between them; that when Chouteau offered to give ninety cents for two ceroons, the offer was refused by the plaintiffs : and that he communicated to them that Chouteau had consented to take two at ninety cents a pound. There is nothing here to show that any contract was made by Chouteau with Tully. He simply, in connection with Gay, offered to give a certain price for a certain quantity of the indigo. The plaintiffs accepted the offer, after communicating with the owner. The indigo was delivered to them, as they insist, upon their advancing a certain sum upon it to Tully, and they sent it to the defendants, upon the terms upon which Chouteau

agreed to buy it, making out the invoice in their own names. There was no contract executed until the plaintiffs obtained the possession of the property, and delivered it to the defendants; and if, upon obtaining possession, or before delivery, they had acquired a special property in it, by making advances to Tully upon it, they, as the parties effecting and consummating the sale, are entitled to bring an action to recover the price. (*Buckman* v. *Brown*, 21 Wend. 110; *Atkins* v. *Amben*, 2 Esp. R. 493; *Grove* v. *Dubois*, 1 T. R. 112; Paley on Agency, 40.)

It is insisted, however, that the evidence offered, to show that they had paid Tully for it, was improperly received. The only objection made was to the introduction of the draft. In respect to other testimony, tending to show the fact, no exception was taken. Wirgman fixes the day when Chouteau and Gay examined the indigo in his presence, and made the offer of 80 cents, as the 18th of January, 1844, which is the day the draft bears date; and he states that the indigo was delivered to the plaintiffs upon the same day, or the day after the sale. He says, that before the sale, Tully was pretty low in funds. That he had just taken the benefit of the bankrupt act. That he was needy the very day of the delivery of the indigo to the plaintiffs, and that after the delivery he had money. That about a day after the sale he saw him with money. That when he came out of the plaintiffs' counting room, he thought he had three or four hundred dollars. That he judged from the size of the bundle of bills, and from the nature and amount of the transaction he had engaged in with the plaintiffs, and the fact that he had no other transaction with them. That from what he knew of Tully's affairs, he was certain that he could have had no other business or transactions with the plaintiffs but this indigo. That he should certainly have known it if he had. All this was received without objection; and upon this testimony alone, I think, the judge would have been warranted in submitting to the jury, whether the plaintiffs had not paid Tully for the indigo when it was delivered into their possession, and before they delivered it to the defendants. The draft was for $359 97, and the price of the four ceroons, at ninety cents,

White v. Chouteau.

was $381 ; from which, according to Wirgman, were to be deducted commissions of one per cent., and also five per cent. for six months' interest and guaranty, a deduction that brings the amount down to the amount of the draft. Wirgman says, that the draft was given to the plaintiffs for their protection. It is drawn to the order of Wirgman, and there is a receipt upon it acknowledging the payment of the amount, bearing date the 22d day of January, 1844, and signed by a clerk of Wirgman, who had authority to sign it; but Wirgman was unable to say whether he had received any money upon it. The only point, therefore, is, whether this draft was admissible, in connection with the other evidence of the acts and declarations of Tully, to show that the plaintiffs had paid him for the indigo. I think it was. It had been shown that Tully was dead, and I think it was admissible under that rule of evidence that permits the acts, declarations, or entries of a deceased person to be given in evidence in certain cases.

Declarations or statements of facts, made by a deceased person, at variance with his interest, which he is presumed to have had a competent knowledge of, or which it was his duty to know, and in respect to which he could have been examined as a witness if alive, are, if pertinent to the matter of inquiry, admissible in evidence as between third parties, whether made at the time of the fact declared, or afterwards. (1 Greenleaf's Ev. § 147, and the cases there cited; *Highman* v. *Ridgway*, 10 East, 109 ; *Middleton* v. *Meeton*, 10 Barn. & Cres. 317 ; 1 Phillips' Ev. p. 255.) Upon the former argument of this case, Judge Ingraham thought, upon the authority of *Kent* v. *Walton*, (7 Wend. 256,) and *Whittaker* v *Brown*, (8 Wend. 490,) that any declaration of Tully as the former owner of the property, though made before the sale, was inadmissible. But I do not see that the rule laid down in these cases has any application to the present case. It was held, in *Kent* v. *Walton*, that the admission of a deceased payee of a promissory note, that the note was an accommodation note, was not admissible against the person to whom the note had been subsequently transferred. The rule adopted in these cases, that the

declaration of a former owner of a chose in action is inadmissible to affect the title of those claiming under him, is at variance with the whole current of authority in the other states of the Union and in England ; (Cowen & Hill's Notes to Phillips' Ev. pp. 664 to 668 ; *Beach* v. *Wise,* 1 Hill, 612, and the authorities collected in the note to that case;) and those cases are, therefore, to be limited to the point expressly decided by them, and are of no authority for any thing beyond it. The declarations of Tully were not introduced here to defeat the title of the plaintiffs, but to show that they had acquired a special property in the indigo before they delivered it to the defendants, by the payment made to him. If he was alive, he would undoubtedly be a competent witness to show that fact, having no interest in the subject matter of the suit, and the draft drawn by him on the plaintiffs for the price of the indigo, coupled with his other acts, tending to show that he had been paid for it, are, as admissions against his interest, competent evidence in an action between third parties. The act or declaration, when it charges the party making it with the receipt of money on account of a third person, or acknowledges the payment of money due to himself, is deemed an act or declaration against his interest, inasmuch as it would be evidence against him. (1 Greenleaf's Ev. § 150.) The first judge thought further, that it was inadmissible, because the effect of it was to sustain the title of the party proving the declaration; that it is only the admissions of a former owner of personal property which are against the interest of those claiming under such owners, that can be proved. With respect to declarations or acts of deceased persons, made against their interest, I know of no distinction thus limiting the admissibility of the declaration of a former owner of property. But that the declarations of a deceased person, though he may have been a former owner of the property, a title to which is claimed by the person offering his declaration, and the effect of which is to sustain the right of that person to maintain an action founded upon an alleged sale of it, are admissible upon the broad ground, if that is apparent, that when made they were

White v. Chouteau.

against his interest; as in this instance tending to show that he had been paid by the party offering his declaration, and had no longer any claim to the property.

It is insisted, however, that the declaration here relied upon was not against his interest, as there is room to suppose a connivance between him and the plaintiffs, it being his interest, a defective article having been sold, to avoid any question about fraud, by means of a pretended payment. There is not the slightest ground in the case for such an inference, as neither he nor the plaintiffs could be made answerable for any defect in the quality of the article. He refused to warrant it, and expressly told Chouteau that he did not know any thing about it, nor any thing about the man from whom he had received it. There was a refusal to warrant, and it was not a sale by sample. Every thing was communicated to Chouteau in the spirit of fair dealing. Chouteau examined the article for himself. He remarked, while he was examining it, that no man could deceive him in indigo, thus professing an intimate knowledge of the nature of the article, to which Tully did not make the slightest pretence. He said he did not believe it to be a fine article, when he made the first offer for it; and when the plaintiff afterwards picked out some pieces from the sample, and pronounced them spurious, Chouteau said, nevertheless, he would give ninety cents for it. He was told expressly by the plaintiffs that if he bought it, he must buy it on his own judgment; and the witness, Maguire, swears that he knows that Chouteau bought it on his own judgment of the article. It is idle to suppose, under such circumstances, that the defendants could have recourse to Tully or to the plaintiffs for indemnity, though the article had turned out to be wholly worthless. And there is, therefore, no ground to found the presumption of any motive on the part of Tully to get rid of future liability, by means of a pretended payment, concocted between himself and the plaintiffs.

The judge was correct in refusing to nonsuit. The instruction asked for in respect to an implied warranty, was not

warranted by the case, and the instruction given was pertinent, and all that the defendants were entitled to.

INGRAHAM, FIRST J.—I still retain the opinion heretofore expressed by me, that in this state, the admissions of a former owner of personal property are not admissible in evidence, even in case of his death. I concede the rule is different in other states and in England, and so is the rule generally as to admissions made by owners of personal property.

WOODRUFF, J.—This action was tried in this court, and the late first judge, who presided at the trial, ordered a nonsuit. At that time the supreme court had jurisdiction of writs of error to this tribunal, and such a writ was prosecuted in that court, upon the hearing of which the judgment here was reversed, and a new trial ordered ; but in the mean time, by the recent change in the organization of our courts, the jurisdiction of the supreme court, and of this, were made co-ordinate, with a like appeal from each, to the court of appeals.

Under such circumstances, this case came on for a second trial ; and the question at once arose, whether, on such second trial, I ought to be governed by the opinion of the supreme court, or to conform to the views of my predecessor and my brethren, who had the matter under consideration before the writ of error was brought.

Upon reflection it seemed to me that it was not only due to the party who had prosecuted the writ of error, but also due in courtesy to the other court, (which, at least, so far as this case had been acted upon by them, were sitting as a superior tribunal,) to defer to the views which led the supreme court to reverse the former judgment. I did not, therefore, regard the questions there raised and decided as open for further discussion in this court.

I entertain the same opinion now in regard to our duty on this appeal. Though no longer an inferior jurisdiction, it seems to me that the parties should be permitted to go to the court of last resort, without further conflict of opinion between the

White v. Chouteau.

judges of this court and those of the supreme court; and, therefore, whatever opinions I might form regarding the questions of law raised on this appeal, I deem it my duty to regard them, for the purposes of the case, as settled in the supreme court.

On one point, however, a suggestion is made, which would seem to present an objection to evidence received on the trial, which was not embraced in the opinion of the supreme court, viz., that an admission by a former owner of personal property is not admissible.    I do not perceive how that question is involved in this case.    The inquiry was, whether the plaintiffs had paid a sum of money to one Tully, now deceased, which money the latter was entitled to receive.   If he was living he would be a competent witness to prove the fact; and being dead, a paper signed by him, which was, in substance, a receipt or acknowledgment, was offered in evidence.

The supreme court thought his declarations either verbal or written, made at the time of the transaction, and being against his interest, were admissible, as an exception to the usual rule, that hearsay evidence shall not be received.    Whether the paper, being in the plaintiffs' hands, as a voucher, and signed by Tully at the time, is to be regarded as a part of the *res gesta*, and admissible on that ground, or whether the declarations of a deceased witness, made against his own interest in a matter within his personal knowledge, are competent evidence, I do not, for the reasons first above suggested, think it necessary nor courteous to discuss.

So far as we are concerned in the disposition of the case, as it now comes before us, it seems to me to be our duty to affirm the judgment, and leave the appellant to his resort to the court of appeals, if he wishes to pursue the matter further.

Judgment affirmed.