Grinnell v. Buchanan.

---

INCREASE M. GRINNELL v. ELIZABETH BUCHANAN and others, executors of ROBERT S. BUCHANAN, deceased.

The rule that an agent or trustee cannot confer upon another the right to discharge the trust or duty created by his appointment, applies only where the act to be done involves personal trust and confidence, or call for the exercise of the agent's discretion or judgment; a mere ministerial or other authority may be delegated by an agent to another.

Grinnell v. Buchanan.

Where A. agreed with B., that if within a fixed time B. should make an arrangement for the taking down of certain houses, he would pay B. a sum of money, which sum was to be paid as a *bonus* to the party taking down the houses, and the arrangement was made,—*Held*, that the agency of B. to receive and pay over the money, was not one involving personal trust and confidence, and might be assigned.

*Held further*, that this arrangement having been made, and its stipulations performed by C., the amount to be paid by A. was simply a debt, on which a right of action remained in B., to be prosecuted for the benefit of C., and which might be assigned by B. to the party beneficially interested.

The effect of *Considerant* v. *Brisbane* (22 N. Y., 389),—considered and discussed, per DALY, F. J.

The Code having abolished the distinction between actions at law and suits in equity, and left but one form of procedure, that form of proceeding is to be preferred which is the most direct, consistent and comprehensive. Hence, where at common law the suit would have to be brought in the name of the trustee, for the benefit of the *cestui que trust*, while in equity it might be brought directly by the latter—the equitable form is to be preferred.

APPEAL by the defendant from a judgment at the trial term, entered upon a verdict for the plaintiff, directed by the Court.

It appeared upon the trial, that Robert S. Buchanan in his lifetime entered, with others, into a written agreement with Raynor and Perry, to pay into their hands the sum of one hundred dollars, provided they should, within three months from the date of the agreement, effect an arrangement by which certain tenement houses in Forty-fourth street should, within nine months thereafter, be taken down, and replaced by first-class dwelling houses; which sum, by the terms of the agreement, was to be paid by Raynor & Perry, as a *bonus* to the party or parties who should within the nine months remove the tenement houses and erect first-class dwelling houses in their stead.

Within three months Raynor & Perry effected such an arrangement with Bebee & Brother, and within the nine months, Bebee & Brother caused the tenement houses to be taken down, and first-class dwelling houses to be erected in their place. Having thus, by the performance of the conditions, become entitled to their one hundred dollars, Bebee & Brother assigned all their right to it to the plaintiff, and re-

leased Raynor & Perry from all claim or demand for it; and Raynor & Perry also assigned to the plaintiff, whatever right, title or interest they had to it, under the agreement.

After the performance of the conditions by Bebee & Brother, Buchanan died, and his executors, upon being notified of what had been done, and of the respective assignments to the plaintiff, refused to pay the one hundred dollars, upon which the present action was brought.

Upon the trial, the defendant insisted that under the agreement, the relation existing between Buchanan and Raynor & Perry was one of agency, which was not in its nature assignable, and that no one, therefore, but Raynor & Perry, could maintain an action for the recovery of the one hundred dollars; but the judge refused to so hold, and the defendant excepted.

The Court directed the jury to find for the plaintiff, and from the judgment entered on the verdict, the defendants appealed to the General Term.

*Cambreleng & Pyne*, for appellants.

*H. P. Townsend*, for respondent.

By the Court.—DALY, F. J.—It is undoubtedly the law that when a man appoints a person to do an act for him, the latter cannot delegate to another the authority conferred, for the maxim is, that *delegatus non potest delegare*. But in the cases in which this maxim has been applied;—in which it has been held that an agent or trustee could not confer upon another person the right to discharge the trust or duty created by his appointment, there was something in the act involving personal confidence, or a trust in him, or in his skill, or which called for the exercise of his discretion, or of his judgment; something which the party clothing him with his representative character and authority was willing to entrust to him, but which it did not necessarily follow he was equally willing to confer upon any other person whom the agent or trustee should think proper to appoint. Thus in *The Attorney-General v. Berryman* (2 Ves. Sen. 643), a personal estate was given to such a use as a Dr. ——— should appoint, and he, instead of exercising his own ——— and discretion in the matter, directed the money to

be applied as his brother, another Dr. Berryman, should direct; which the Court held he could not do. In *Ingram* v. *Ingram* (2 Atk., 88), a husband, by the terms of a marriage settlement, was authorized to dispose of the reversionary interest in a copyhold estate, in such proportions, among the issue of the marriage, as he should think fit; which power was to be executed during his life time, or by will at his death; and by his will he directed that it should be disposed of between his son and daughter in such proportion as *his wife* should think proper; and the Lord Chancellor held that the power was one that could be executed only by the husband, and could not be delegated to the wife.

In *Alexander* v. *Alexander* (2 Ves. Sr., 640), Lord HARD-WICKE said, in reference to a discretionary power: "If there is a power to A. of *personal trust and confidence to exercise his judgment and discretion*, A. cannot say this shall be appointed by the *discretion* of B., for *delegatus non potest delegare*. In *Catlin* v. *Bell* (4 Camp., 184), the defendant was master of a ship trading to the West Indies, and the plaintiff entrusted to him a quantity of millinery goods, which he undertook to sell for her. The master not being able to sell the goods in the island to which they were destined, sent them by another person to a place in Central America, for a market, where they were destroyed by an earthquake; and Lord ELLEN-BOROUGH held that a special confidence having been reposed in the master with respect to the sale of the goods, he could not entrust them to another person. In *Sally* v. *Rathbone* (2 M. & Selw., 298), the plaintiffs consigned a quantity of merchandise to their factors in Liverpool. The factors being embarrassed, and not having funds wherewith to pay the freight and duties, made an arrangement whereby another house in Liverpool took part of the consignment, paid the freight and duties, and sold the goods, with an understanding between them and the plaintiffs' factors, that the commission upon the consignment should be divided between the two houses; and Lord ELLENBOROUGH held, that this act on the part of the factors was wholly without authority, and a fraud upon the consignors; and in the case of *Cochran* v. *Irlam* (Id., 301, note a), which in its general features resembled the foregoing, the same judge said, "A principal

employs a broker from the opinion he entertains of his personal skill and integrity, and a broker has no right, without notice, to turn his principal over to another, of whom he may know nothing. In *Tonkin* v. *Fuller* (3 Doug., 300), Lord MANSFIELD said that a common letter of attorney did not enable the attorney to assign; and in a very early case, *Deering* v. *Farrington* (3 Keb. R., 304; 1 Mod., 113), C. J. HALES pointed out the distinction between the assignment of a *duty* and of a *benefit*, a distinction which interprets and lies at the foundation of the rule under consideration.

To the same general effect are the principal elementary writers. The office and duties of a trustee, says HILL, being matters of confidence, cannot be delegated by him to another (*Hill on Trustees*, p. 175, Am. ed.). One agent cannot lawfully nominate and appoint another to perform the subject of his agency (*Brown's Maxims*, p. 385). One who has authority to do an act for another, must execute it himself; for being a trust and confidence reposed in the party, it cannot be assigned to a stranger, whose integrity and ability were not so well thought of (*Bacon's Abr.*, Authority D). A delegated authority can be executed only by the person to whom it is given, the confidence being personal (*Paley on Agency*, 175). Agency is generally a personal trust and confidence which cannot be delegated, for a principal employs the agent from the opinion which he has of his personal skill and integrity (2 Kent's Com., 633).

These authorities sufficiently indicate the nature and extent of this rule, and show that it has no application to a case like the present. Buchanan agreed to pay the one hundred dollars to Raynor & Perry, if they should, within the time limited, effect the arrangement, which they did, and by the very terms of the agreement, it was understood that the money was to be paid as a *bonus* to the party who should do what Buchanan desired to have done. If any such relation as that of agency, or any other relation involving personal trust and confidence existed under this agreement on the part of Raynor & Perry, it was fully exercised and discharged when they effected the arrangement by which the tenement houses were taken down and dwelling houses erected in their stead. There was nothing then to be done by them but to receive the one hundred dol-

Grinnell v. Buchanan.

lars and pay it over to Bebee & Brother. The conditions upon which Buchanan had agreed to pay it had been fulfilled, and all that remained was a right of action in Raynor & Perry, to be prosecuted for the benefit of Bebee & Brother. It was simply a debt, and the assignment of it to the party beneficially entitled to it, in no way conflicted with the rule preventing an agent or trustee from transferring the personal confidence and trust to another reposed in him by his appointment.

Raynor & Perry were trustees of an express trust, according to the construction put by the Court of Appeals in *Considerant* v. *Brisbane* (22 N. Y. R., 389), upon the 113th section of the Code, which excepts the trustees of an express trust from the general provision in the 110th section, declaring that every action must be prosecuted in the name of the real party in interest, and which defines such a trustee to be one, with whom or in whose name, a contract is made for the benefit of another. But for this provision, and the construction put upon it, Bebee & Brother, or the plaintiff, as their assignee, might have brought the action in their own name, without any assignment from Raynor & Perry. The general rule before the Code, though there was some conflict in the authorities, is thus laid down in *Browne upon Actions at Law* (pp. 102, 103): "The action should be brought by the party with whom the contract was in law made, that is, the one from whom the consideration in fact moved, * * * for whenever the consideration moves from a party, though the promise be made to another; yet, he from whom the consideration moves, may be plaintiff," and here the consideration, which chiefly induced the promise, the taking down of the tenement houses, and the erection of dwelling houses in their stead, moved from Bebee & Brother, to whom though not named, Buchanan meant that the one hundred dollars should be paid. "If," said Chief Justice EYRE, in *The Feltmakers' Company* v. *Davis* (1 Bos. &. Pul., 102), "a promise is made to A., for the benefit of B., and an action is brought by B., the promise actually made to A. may be given in evidence under the declaration; and to the same effect are numerous authorities (*Cooker* v. *Child*, 2 Lev., 74; *Gilby* v. *Copley*, 3 id., 139; *Piggot* v. *Thompson*, 3 Bos. & Pul., 147; *Buckbee* v. *Brown*, 21 Wend., 110; *Bayley* v. *The Onondaga Mutual Ins. Co.*, 6 Hill, 476; *Gilmore* v. *Pope*, 5 Mass., 491; *The Taunton*

*& South Boston Turnpike Co.* v. *Whiting,* 10 Mass., 327; *The Commercial Bank* v. *French,* 21 Pick. R., 486). But it was held by WRIGHT, J., in delivering the Opinion of the Court in *Considérant* v. *Brisbane,* that although it appear upon the face of the writing that the person to whom the promise was made was acting in a representative character, and the name of the principal was disclosed, and there was nothing to indicate that he had any interest in the subject matter, he was nevertheless within the meaning of the Code, a trustee of an express trust, in whose name the action must be brought. The promise in that case was to pay C., as executive agent of a company, a sum of money in consideration of a certain amount of the stock of the company which the defendant was to receive, and this, in the judgment of the Court, made the agent a trustee of an express trust. I had supposed that the object of the general provision of the Code, that the action should be brought in the name of the real party in interest, was to enlarge the law in this respect, and to do away with nominal parties, except where they were charged with some active trust or other duty, that made it essential that the action should be brought in their name; in this respect, adopting the more rational rule which prevails in courts of equity (*Calvert on Parties to Suits in Equity,* 229, 230, 218), as contra-distinguished from the technical one that had grown up in the courts of law; but the effect which has been given by this decision to the section which excepts a trustee of an express trust, will make the law, in fact, more technical than it was before; and with the greatest respect for the judgment of the highest Court in the State, I think they have given a construction to that section which the legislature was far from intending, and which will require hereafter suits to be brought in the name of agents or others acting in a representative character, which, before the Code, might be brought in the name of their principals. The construction put upon this section by Justice DENIO in his dissenting opinion, and by Justice WOODRUFF in the Court below, would, in my judgment, have made it harmonious with the law as it previously existed, and at the same time carried out what was manifestly the design of the Legislature.

The decision in *Considérant* v. *Brisbane,* however, does not reach the present case, as Raynor & Perry have assigned the

Grinnell v. Buchanan.

legal interest which they had in the debt, to the assignee of the parties beneficially entitled to it. As they were mere naked trustees, there was nothing in the rule which I have previously considered to prevent them doing so, and it only remains to enquire whether there is any other rule of law to prevent the making of such an assignment, or if made, which would prevent the assignee from bringing an action to recover the debt in his own name. At the common law a debt was not assignable, nor any right in action (*Year Books*, 21 Edw. IV, 84); nothing in fact but a thing actually existing or in possession, the reason for which, according to the older writers, was to prevent champerty and maintenance. In the language of Lord COKE, it was "for the avoidance of maintenances, the suppression of rights, and the stirring up of suits," and therefore he says, "nothing in action, entry or reëntry, can be granted over, for under color thereof pretended titles might be granted to great men, whereby right might be trodden down, and the weak oppressed, which the common law forbiddeth, as for men to grant before they be in possession" (*Coke Litt.*, 214 a, § 347). However politic or necessary such a rule as this may have been in the state of society in which it was adopted, it was not suited to the wants of a more advanced period, and it would long since have been among the things of the past, if means had not been devised to evade the effect of it. A similar rule existed, according to POTHIER, in the old French law, but for a more subtle and technical reason than that assigned by Lord COKE, that is, that the obligation of the debtor was made to the creditor, and that the creditor could not, by his act, make the debtor obliged to another. But when the inconvenience of the rule came to be felt, the French lawyers, he says, devised a mode by which it could be nominally maintained and its effect avoided, by declaring that the creditor could make another person his mandatory to exercise his right of action in his name, but at the risk and for the benefit of the mandatory (*Traité du Contract de Vente*, partie 6, chap. 3, art. 1; *Œuvres de Pothier*, tom. 3, p. 329, ed. of Paris, 1821), but finally this subtlety even was abandoned and the rule adopted that the assignee of a debt succeeded to all the rights of the assignor (*Troplong des Privil. et Hypoth*, tom. 1 n., 340; id. *de la Vente*, n. 879 to 882; n., 906, 913; Code Civ. Liv. 3, tit. 6, chap. 2, § 412). For sim-

35

ilar reasons the courts of common law relaxed this rigid rule. They held that as the assignment of a debt or obligation was good in equity, parties ought not to be put to the expense of going into a court of equity, and they adopted the expedient of the French lawyers, by allowing an action for their recovery to be brought in the name of the assignor, for the benefit of the assignee, subject to all equities between the assignor and the debtor, existing before the debtor had notice of the assignment (*Winch* v. *Keeley*, 1 T. R., 621, 622 ; *Bacon's Abm. Assignment*, A, and note), and this continued to be the rule at law down to the adoption of the Code. But the rule of the common law never prevailed in the Court of Chancery. The propriety of the assignments of debts and obligations, and of the right to enforce them, was recognized in that Court, unless it was made to appear that the object of the assignment was champerty or maintenance. The assignment of a chose in action was in equity perfected by the service of notice of it upon the debtor, which operated as a constructive transfer of the possession, and if any circumstances existed to impede the assignee's remedy in a court of law, he might enforce the debt or obligation by a suit in equity in his own name, unless in cases where the instrumentality of a court of law was indispensable, as in ascertaining unliquidated damages, which could be fixed only by the verdict of a jury (*Adams' Doctrine of Equity*, 54, 55, 161 ; *Story's Equity Jurisprudence*, 1040, 1049, 1055, 1057, 1057, a). Story says in fact that the assignee might sue in a court of equity, even where there was no impediment to his remedy at law, if the claim were for a fixed sum (id., 1057, 1057 *a*, 6), but this is more doubtful.

In this State, the distinction between legal and equitable tribunals ;—between actions at law and suits in equity, has been abolished, and we have but one form of procedure, whether the relief sought be legal or equitable, or both. There is, therefore, with us no longer any occasion for adhering to the rule of the courts of law, that this action must be brought in the name of the assignor, for the benefit of the assignee, but we may adopt the rule of the Court of Chancery, that the assignee may sue in his own name. Where a choice is to be made between the form of proceedings at law or in equity, that one is to be preferred which is the most direct, consistent and comprehensive,

De Rutte v. The New York, Albany and Buffalo Telegraph Company.

and in this respect the rule which prevailed in courts of equity is a less technical and a better one than that which existed in the courts of law. If the cause of action, therefore, is one upon which a party might have sued in his own name in equity, he should sue in the same manner now, and as the debt or obligation which arose under this contract was assignable in equity, and the legal interest which was in Raynor & Perry, and the equitable interest which was in Bebee & Brother, have passed by assignment to the plaintiff, the action was properly brought in his name (*Hook* v. *Kinnear*, 3 Swans. R., 41?, *n*).

It does not appear by the case that the point was raised upon the trial in respect to the presentment of the claim, or any exception taken, and it is therefore unnecessary to consider it.

The judgment should be affirmed.