HUBERT LENZEN v. CITY OF NEW BRAUNFELS.

No. 1473.

**Municipal Corporation—Water-works—Liability for Failure to Supply Water for Extinguishing Fires.**

A city which, for its advantage and gain, has voluntarily assumed the duty of supplying its inhabitants water for general purposes and for the extinguishing of fires, is liable to a patron of its works for its negligence, whereby a failure to supply water resulted and such patron's property was destroyed by fire, which but for such negligence would have been extinguished.

APPEAL from District Court, Comal County. Tried below before Hon. EUGENE ARCHER.

*J. B. Dibrell* and *W. R. Neal,* for appellant.—The city council of a city containing one thousand inhabitants or over, adopting the general charter, has power to provide the city with water, and to make, regulate and establish pumps and cisterns, hydrants and reservoirs, in the streets or elsewhere, for the extinguishment of fires and the convenience of the inhabitants. Rev. Stats., art. 374; Muller v. City of Denison, 1 Texas Civ. App., 293; City of Bonham v. Taylor, 81 Texas, 62.

When a corporation accepts a charter giving defined powers, the law

imposes the duty of faithfully exercising them, and gives an action for misfeasance or neglect in this respect to any person who may be injured by such failure of duty.  City of Galveston v. Posnainsky, 62 Texas, 118; Baugus v. City of Atlanta, 74 Texas, 629.

Corporations that voluntarily assume and undertake the performance of a work, even though it be quasi public in its character, ought to be held to impliedly contract that they will exercise due care in its performance, and for a neglect in this respect should be liable for the resulting damage.

The averments of the petition are in all respects such as would entitle appellant to recover, but the district judge was of the opinion that a city incorporated like the defendant is not liable for the injury alleged, in the absence of a statute expressly so making it, and this holding is contrary to the doctrine that cities chartered under the general law are liable for the negligent and unskillful performance of a work voluntarily assumed and undertaken, under powers conferred by a charter voluntarily adopted.  Baugus v. City of Atlanta, 74 Texas, 629; City of Galveston v. Posnainsky, 62 Texas, 118; City of Galveston v. Barbour, 62 Texas, 172; Kline v. City of Dallas, 71 Texas, 284; 15 Am. & Eng. Encycl. Law, 1141.

*J. D. Guinn*, for appellee.—The first proposition of appellant we do not deny, but the second and third are too general, and only apply where the matter in question is of a public nature, and the charter gives the city the exclusive control, and makes this duty either expressly or impliedly imperative.  House v. Houston Water-works Company, 31 S. W. Rep., 176.

When a legal duty has been imposed by statute upon a municipal corporation, it is usually liable for injuries resulting from the neglect of that duty.  But the duty must be absolute or imperative, not such as under a grant of authority is entrusted to the judgment and discretion of the municipal authorities.  It is not liable for a non-exercise of its discretion as to power of a public or legislative character, and the power on the part of a municipal corporation to supply facilities for sufficient quantity of water to extinguish fires, does not impose a liability for a failure to supply such facilities.  City of Brenham v. Water Co., 67 Texas, 543; 15 Ency. Law, 1145, par. 5, note 2, where we have about one hundred authorities, also 1147, note 1, from which the latter part of our proposition is taken; Van Horn v. Des Moines, 63 Iowa, 447; 4 Am. & Eng. Cor. Cases, 639; Black v. Columbia, 19 S. C., 412; 19 Ohio St., 19, 2 Am. Rep., 68; 123 Mass., 311, 25 Am. Rep., 90; 29 Ind., 187; 78 Ga., 241; 57 Am. Rep., 664; Mendal v. Wheeling, 28 W. Va., 233.  Since this suit was brought the case of House v. Houston Water-works, 31 S. W. Rep., 279, has been reported, and we think that the principles therein laid down apply to this case, especially that part of the decision to be found in said case on pages 184 and 185.

FISHER, CHIEF JUSTICE.— *Opinion.*—Appellant sued the city of New Braunfels in damages, for the value of a certain building and its contents, the property of appellant, which the petition avers was destroyed by fire without the fault or negligence of appellant, and was so destroyed by reason of the negligence and want of care of appellee in this: that at the time of the fire, and before, the city was the owner of, and actually operating, a system of water-works, and that said works were erected by means of taxation of the property situated in said city, and that the city charged its inhabitants tolls and rates for the use of water from said system and was thereby maintained, and that the city was then operating said works and supplying water as a business for its gain and advantage, and that the appellant was a patron of said works, paying the usual and customary rates, and was a taxpayer of said city. That the city by reason of these facts assumed the duty and became bound to supply its public hydrants and those controlled and owned by appellant and other patrons of the system for the general purpose for which water is used and for the extinguishment of fires. That there was located and convenient to the property destroyed public hydrants used by said city for extinguishing fires and also private hydrants of appellant which connected with said water system. That at the time of the fire the city negligently permitted the water to get so low in the stand-pipe that sufficient pressure was not furnished to throw the water upon the burning building from the hydrants aforesaid, and that the city negligently permitted its water-works to get out of repair and so remain, and that but for the negligence as stated, water could and would have been used through the hydrants and the fire extinguished and as a consequence the property saved. It is also alleged that the city was incorporated under the general laws of this State relating to the incorporation of cities of over one thousand inhabitants. From the averments as a whole the inference is permissible that if the water had been supplied through the hydrants, those in use by the city as well as those in the control of appellant, that he would and could have used and operated them by means at his control and thereby extinguished the fire. This in effect is about the case made by the petition, and it is possible that it is somewhat vague and indefinite and not full enough in some respects; but the demurrers were not, it seems, sustained for these reasons, but were sustained, as we are led to believe from the manner in which the case is here treated, upon the ground that a city would not be liable under the circumstances stated. It is from the ruling of the court in sustaining the demurrers that this appeal is prosecuted.

A city or town incorporated under the general laws of this State voluntarily assumes its incorporated and municipal status. And its powers and privileges with reference to supplying the city and its inhabitants with water are authorized by article 374, Sayles' Civil Statutes, and such rights and privileges and responsibilities when assumed are voluntary, as the law does not require the city as a public duty to furnish water. There are similar statutes authorizing the city to construct streets, side-

walks, sewers, drains, bridges and to furnish lights, markets, hospitals, work houses, etc.   In the matter of streets and highways and of some other named public property, the city is given exclusive control and is empowered to keep in repair and proper condition.   The statute concerning the supply of water does not give the city exclusive authority to so furnish and supply the city with water.   It says that the city may furnish water or cause it to be provided for the extinguishment of fires and for the convenience of the inhabitants.

The question to be decided is, can a city so voluntarily incorporated as appellee, which for its advantage and gain has voluntarily assumed the duty of supplying its inhabitants water for general purposes and for the extinguishment of fires, be held liable to the injured party, who is a patron of the works, for its negligence in operating its works whereby a failure to supply water resulted and thereby caused the damages complained of, when by a system of works, supposed to be adequate and in actual operation, the duty could have been and would have been performed but for the negligence complained of.   At the outset it may be said that where it has been sought to hold municipal corporations liable for a failure to furnish water, or the negligent operation of its waterworks or appliances for the extinguishment of fires, or for the failure of those charged with such service to perform it with care and whereby property has been destroyed by fire, the great majority of cases upon the subject have denied liability.   These cases deny liability upon several grounds; some hold that supplying the city with water is purely a public governmental duty; and in some, where the liability was sought for the negligence of the fire department in operating the apparatus or of the works, it was denied for the reason that those so charged with the negligence were officers of the city and therefore the doctrine of respondeat superior did not apply.   Others are based upon the proposition that furnishing and supplying water is an act legislative in character and a matter of discretion with the city, therefore it cannot be coerced in this respect and no action lies for the failure to perform this service. And there is a further reason stated in nearly if not all of these cases, which is more in the nature of an apology than the statement of a principle of law, and this is to the effect that to admit liability would be to cause serious financial embarrassment to incorporated cities and towns, and thereby impair their efficiency to perform the functions of municipal governments.

Municipal liability for negligence or want of care has been denied in many other instances when the complaint was based upon negligence in the conduct of other municipal affairs, and in addition to the reasons stated others have been given.   In a few jurisdictions liability has been denied for the reason that it does not exist except by an express statute to that effect.   Some few cases draw a distinction between a positive act of negligence committed which may cause injury to another, and the passive conduct of the corporation in the nature of an act omitted which in

a negative way may result in harm. In the former the municipal government is held liable, in the latter not liable.

There are instances in which liability was denied upon the ground that the city was exercising the particular function from which the negligence arose under a general statute that applied alike to all cities, and not a special charter or grant of power applicable to that particular locality. But however numerous the reasons may be that have been given for denying municipal liability, those courts that have denied it in cases like the present, as well as the great majority of the courts of the States of the Union and of the United States, together with a number of cases in England, admit that municipal corporations are liable for the negligence in the conduct of a corporate business that concerns the municipality locally, and especially so when they are engaged in it for gain and advantage, although the public is served in its performance, which is not strictly of a public governmental character and which does not involve the exercise of a legislative discretion. And in this view, with some other reasons that have induced them to hold, these courts have steadily held that for negligence in the control and management of its streets, sewers, gas-works, electric plants, bridges, docks, piers and other public works used by the cities in their corporate capacity, they were liable; and have denied the rule that exists in some few States that liability exists only when fixed by statute, and place the liability upon the principles of the common law. City of Greensborough v. McGibbony, 20 S. E. Rep., 38; Barnes v. Dist. Columbia, 91 U. S., 551; Galveston v. Posnainsky, 62 Texas, 133. It must be admitted that if the negligence arises out of the exercise of functions purely of a public, governmental nature, or is based upon acts or conduct which is legislative in character and which the city may or may not exercise as its discretion may direct, or involves the act or conduct of an officer in the discharge of an official duty, as contradistinguished to an act of the agent or employe of the city in relation to its municipal affairs, then the city will not be held liable. And in ascertaining, in the present case, whether the city is or not liable, we must necessarily determine whether the act or conduct complained of falls within either of the principles stated, and whether any of the other reasons stated for not holding cities and towns liable are applicable to the present case, or are rules to be observed in this and other cases of a like nature why a city should not be held responsible. This brings us properly to a consideration of the question whether the operation of the water-works in question was of a public governmental nature, or was the operation of a work in behalf of the city and its inhabitants for the business and local benefit of the city in its corporate capacity. In view of the doctrine admitted and the principles discussed and decided in the authorities hereafter stated, we are clearly of the opinion that the works in question fall within the latter class. If municipal liability is admitted, which undoubtedly it is in cases of damages sustained by reason of negligence in the control and management of streets, sewers, drains, docks, bridges, gas and electric works, and other

corporate property used for the local advantage of the city, what reason-
ing upon principle may be advanced that will distinguish these cases
which so establish liability upon principles of common law, from the
case at bar? The same reasons that are given for establishing liability
in those instances equally apply in this case, and what real difference is
there between works of that nature and a water system voluntarily oper-
ated by the city for its gain and advantage. The general public or the
government has not the same interest in the operation and management
of a water system, which is only local in the benefits to be derived from
its operation, as they have in the control and operation of the streets
and bridges, and docks and waterways under the control of the city. In
these latter instances the general public, in the furtherance of commerce
and a use by the traveling public, have a direct interest to the extent
that such property should be kept in safe condition, so that it may be
used in the manner in which such property was intended, while upon
the other hand only the city locally and its inhabitants are interested in
the operation of a water system. What special privilege or prerogative
of sovereignty is there in the operation of a water plant, and what spe-
cial governmental public purpose is to be accomplished in the operation
of such works? The statute law does not require the city to operate
such works for the public good, but the duties and functions they perform
are assumed voluntarily, not as a necessary public arm of the city gov-
ernment, but more nearly than otherwise to subserve a corporate and
local purpose. The functions that such works perform are not an attribute
of sovereignty nor do they arise because the service they render is purely
of a public governmental character. For the same service may be ren-
dered to the public and the city and its inhabitants by individuals and
private corporations. It is true that some of the uses and benefits which
arise from such works in part aid in preserving the health of the
inhabitants of the city by furnishing in part a means to preserve proper
sanitary conditions and in preventing the destruction of property by fire,
but this benefit and use is simply one of the many incidents that arise
from the general service, as it is a well known fact that in towns of the
class and population of appellee there are generally wanting sewer sys-
tems and drains by which the water may be used for public sanitary
purposes, and that the principal benefit to be derived from such works
is to the inhabitants locally and individually and to the profit and ad-
vantage of the city in its business and corporate capacity. It is not
enough to say that because the city by its water system serves the pub-
lic it is a public governmental function, for if such was the case every
work or service engaged in or carried on by a municipal corporation
could be called a part of its general governmental machinery, for all the
property held and used by cities is more or less for public purposes.
The fact that the public receives a benefit from the operation and use of
such property is not a criterion to determine its character and liability,
for if such was the case railways and other public enterprises of that
character, which in their relation to the public are more nearly asso-

·ciated with the general welfare of the public than are water systems of many of the towns and cities, could be classed solely as public enterprises. But the public service they render and their duty and relation to the general public in the conduct of their business has never been urged as a defense to their liability for negligence. Judge Dillon, section 27, page 46, volume 1, of his work on municipal corporations, in speaking of whether the powers exercised are of a public nature, says: "Thus, for example, a city may be expressly authorized in its discretion to erect a public wharf and charge tolls for its use, or to supply its citizens with water and gas, charging them therefor and making a profit thereby. In a sense such powers are public in their nature because conferred for the public advantage. In another sense they may be considered private, because they are such as may be, and often are, conferred upon individuals and private corporations and result in a special advantage or benefit to the municipality as distinct from the public at large. In this limited sense, and as forming a basis for the implied civil liability for damages caused by the negligent execution of such powers, it may be said that a municipality has a private as well as a public character."

By referring to the reasons given in the many cases subsequently noticed there is no substantial difference between the operation of a system of water-works, and streets and sewers and other like works, and if it is true, as there repeatedly held, that cities are liable for negligence in the operation of such works and the management of such property, the same rule of liability should exist for negligence in operating its water-works. The benefits and the purposes to be accomplished in the operation of these works are no more advantageous and useful to the public and the government than is the case in the operation of streets, sewers, docks, etc. Under the averments of the petition there is an aspect of the case when considered clearly, in our opinion, takes the operation of these works out of the realm of governmental functions. It is alleged that the city was operating these works for its profit and advantage and that the appellant was a patron of it for hire and that the city owed him the duty to furnish water, etc. It follows from this that while the city may have been serving the public, it was doing so voluntarily, in a matter and in a way that was locally confined to the inhabitants of the town for their advantage and for the money to the corporation there was to be had in the performance of this service. It is admitted, with only a few exceptions, that a municipal corporation that engages in a business for its gain and advantage, although the public are served in its performance, will be held liable as an individual for its actionable negligence in the conduct of its business. This is even admitted in those courts that adopt the extreme rule of the limited liability of municipal corporations.

There can be no question under the averments but that these works are a business concern carried on by the city. It is as much so as any work or enterprise that a city may engage in. The same elements exist,

the same service is performed, the same duties are required, and the same benefits result in the operation of these works, as is the case where similar works are owned, operated and conducted by individuals. and private corporations.    The reasons employed and facts considered in order to determine in these latter instances if such an enterprise was a business concern, in the main, apply and govern in ascertaining if a like enterprise conducted by the city is a corporate business concern. "The liability of the corporation for its negligence, or that of its servants, is especially clear, and in fact indisputable, where it has received a consideration for the duty to be performed, or where, under permissive authority from the Legislature, it voluntarily assumes and carries on a work or undertaking from which it receives or derives a profit." 2 Dillon, Munic. Corp. (4th ed.), sec. 981 and notes.

The question next in order to be considered is whether, under the averments of the petition, the operation of the water-works was a legislative function and a discretionary matter with the city.    It is well settled that if the conduct of a business out of which the alleged negligence arises is a matter legislative in character, and about which the city may exercise a discretion, it will not be held liable, and the courts have no power to control them in such matters, but this rule is subject to· the qualification that if the act passes beyond the discretionary and legislative stage, and the city actually engages in the business with no purpose to abandon it, the performance of the service and duties assumed becomes ministerial to the extent of the exercise of ordinary care, in the execution of such work, to those to whom they are owing this duty. The city could not have been held liable for failure to construct and operate the water-works in question, nor can it be controlled in the exercise of its privilege to abandon such works if it sees proper to do so.    But such is not the case here, for the averments are to the effect that the city is actually operating its works, and by its negligence failed to perform a duty that it owed to appellant in the performance of the service that it was then engaged in.    The duty of the city in this respect ought to be held ministerial.    The failure to furnish the water was not from the bona fide exercise of the privilege to abandon the operation of the works, but arose from its negligence when engaged in their present and actual operation.    If the city originally constructed and subsequently intended to operate an adequate system of water-works, capable, by the exercise of ordinary care, to furnish a supply of water reasonably adequate to the extinguishment of fires that may occur in that locality, it rested under the duty it had assumed to its patrons that it would exercise ordinary care in the performance of this service, and would not, by its negligence in operation, defeat the purposes intended to be accomplished by a use of the works.    "The doctrine may be considered as established, where a given duty is a corporate one, that is, one which rests upon the municipality in respect of its special or local interests, and not as a public agency, and is absolute and perfect, and not discretionary or judicial in its nature, and is one owing to the plaintiff,

or in the performance of which he is specially interested, that the corporation is liable in a civil action for the damages resulting to individuals by its neglect to perform the duty, or for the want of proper care or want of reasonable skill of its officers or servants acting under its direction or authority in the execution of such a duty; and, with the qualifications stated, it is liable, on the same principles and to the same extent, as an individual or private corporation would be under like circumstances. For illustration, if a city neglects its ministerial duty to cause its sewers to be kept free from obstructions, to the injury of a person who has an interest in the performance of that duty, it is liable, as we shall see, to an action for the damages thereby occasioned. So, if a city owns a wharf or pier and receives wharfage or profit therefrom, it is liable, like an individual or private corporation, for injuries caused by a failure to keep it in proper condition and repair. So in respect to its failure to keep its streets in a safe condition for public use, where this is a duty resting upon it. The liability of the corporation for its own negligence, or that of its servants, is especially clear and in fact indisputable, where it has received a consideration for the duty to be performed, or where, under permissive authority from the Legislature, it voluntarily assumes and carries on a work or undertaking from which it receives tolls or derives a profit." This is the language of Judge Dillon upon the subject, in his second volume, section 980, on Municipal Corporations.

In determining the duty and liability of corporations that undertake to perform service of this character to those who are for a valuable consideration its patrons, the only reasonable rule is that, by reason of the duties assumed by the corporation which it has undertaken to perform to the individual and the public, they have the right to demand that in the exercise of these functions reasonable care and diligence be observed and that the corporation shall not be guilty of negligence that will defeat the performance of this duty. The situation of the parties and their relation to each other clearly raises an implied obligation to this extent, and a contract results between the corporation and water rent payer that such duty will be observed. The same rules of measuring the duties and responsibilities that exist in other cases where parties impliedly or expressly rest under obligations to perform duties to others, should govern in this case.

Intimately connected with this feature of the case is the discussion of the question whether the negligence for which the municipal corporation will be liable is limited to acts committed which endanger the rights of persons or property of another, or whether it will, in addition, be held liable for the omission or failure to perform an act when confessedly the duty rests upon it to do so and from its failure in this respect injury results. It seems to us the statement of the question is an answer to it, and that those cases that draw a distinction between negligence committed and that that arises by reason of failure to perform a duty are not supported by reason. In the conduct and operation of a work or enterprise, the omission or failure to do an act that is imposed

by duty often embraces the elements of an act committed. Take the case here, for instance: the city permitted the works to get out of order, and permitted the water in the stand-pipe to get so low as to not afford a pressure. The acts committed were in permitting the water to get low and in permitting the works to get out of repair; the acts omitted were the failure to repair the works and raise the water in the stand-pipe in order that its use would be serviceable. So, in this case, it may be said the negligence embraces both elements and grows out of both affirmative and negative conduct. But, to get back to the question, we clearly think there should be no distinction and that liability exists as well when the negligence arises from failure or omission to perform a duty as when the injury is traceable to some positive act or wrong which immediately occasions damages. Take the relation of parties in their business affairs: When one undertakes the performance of a service for the other he rests as much under the implied duty that he shall perform the service in the way useful and intended and that he will repair and correct the situation that his fault has occasioned, as well as he is held liable if in the conduct of the business he is guilty of some positive act of negligence from which injury results. In either event the consequence to the injured party is the same, and in both instances it is the fault of the other that occasions the damages. "Negligence is the absence of proper care, caution and diligence,—or of such care, caution and diligence as, under the circumstances, reasonable and ordinary prudence would require to be exercised. It may consist as well in not doing the thing which ought to be done as in doing that which ought not to be done, when in either case it has caused loss or damages to another." This definition is given in a case in which it was held that the city was liable for failing to repair a defective gas-pipe under the control of the city, by which an explosion resulted and caused damages. Kibele v. City of Philadelphia, 105 Pa. St., 44.

We may next consider the question whether liability in this case may be denied upon the universally admitted ground that the city will not be held liable for the conduct of its public officers. Shanewerk v. City of Fort Worth, 32 S. W. Rep., 918, and cases there cited. This doctrine cannot be applied to this case. The petition does not complain of the conduct of an officer of the city, but charges the city directly with negligence in the conduct of a business that does not necessarily have to be performed by a public officer, but may be in the charge of an employe or servant of the corporation. No complaint here is made as to the negligence of the fire department of the city or those engaged in the public service of extinguishing fires; and if such was the case a different ruling might be made, for it is properly held by the weight of authority that those engaged by the city to perform that duty are its officers, for whose conduct it would not be liable. Shanewerk v. City of Fort Worth, supra. The petition alleges that public hydrants were located in the street in reaching distance of plaintiff's property and that plaintiff had in operation private hydrants on his premises which, if

supplied with water by sufficient pressure, could and would have been used in extinguishing the fire. There is no complaint that the city did not furnish the apparatus and force of firemen to use it so that the fire could have been prevented or extinguished, but the complaint is in the failure to furnish water, and the inference is clear from the averments that if this had been done the appellant would and could have operated the hydrants and used the water by means under his control and thereby have prevented the loss.

Does the fact that the city in question was incorporated under a general law that applies alike to all cities of the class to which it belongs, relieve it of liability? The doctrine is established in the well considered case of City of Galveston v. Posnainsky, 62 Texas, 119, that a city acting under a special charter as a municipal corporation and voluntarily assuming its corporate status as well as undertaking to perform certain corporate duties and functions is liable to those who are injured by its negligence to perform the duties assumed. This case is full upon this subject and later on will be stated at length. The principles decided in this case, when considered in connection with the later case of Baugus v. City of Atlanta, 74 Texas, 630, settle the question as to the liability of cities incorporated under the general laws. In this last case it is said: "It is not seen, however, why a city or town which incorporates under the general laws of this State, through the voluntary act of its inhabitants, for the benefit of the particular locality and its residents, should not be held responsible for an injury inflicted under circumstances which would fix liability on a city or town incorporated by a special act of the Legislature clothed with same powers and charged with same duties. In the one case as in the other the charter is special and, in either case, in fact or presumably, obtained through the request or voluntary act of those who seek benefit through the execution of the powers conferred. If there be any difference it is not in favor of such cities and towns as by the voluntary act of their inhabitants incorporated under the general law, for, as to them, there is wanting the element of compulsory incorporation, and their inhabitants must be presumed to have weighed the local benefit to be obtained by incorporation before they asked that the powers be conferred upon them which fix the corresponding duty carefully to exercise them." The principle announced in this case, together with those discussed and approved in Galveston v. Posnainsky, supra, upon this question, as well as the other questions there noticed, are in the main applicable to the prominent features of this case, and in our opinion are authority for holding the city liable here. The effect of these two cases is that the duty resting upon a city operating under the general law to keep its streets in repair is ministerial and that such duty, being voluntarily assumed, relates to a matter corporate and local in character and is not the exercise strictly of a public governmental function, and "that when such a corporation accepts a charter giving defined powers the law imposes the duty of faithfully exercising them and gives an action for misfeasance or neg-

lect in this respect to any person who may be injured by such failure of duty." Klein v. Dallas, 71 Texas, 284.

In response to the reason for non-liability of cities and towns in cases of this character given in most of the decisions that deny it, to the effect that it will create against such municipal corporations liabilities greater than they should bear, much might be said, and the same reason could as consistently be given in a number of other instances to deny liability in cases where it is now admitted by all courts to exist. Admitting liability against railways and other quasi public corporations in the great number of instances in which liability exists has proved disastrous to many of those bodies and has forced them into the hands of receivers, but it has never been urged that this misfortune absolves them from responsibility. If such a reason would hold good in one class of cases why not urge it in all? If it is a good defense against municipal liability for negligence in the management of its water system that to admit it would burden the city with a liability, why, upon principle, should not the same defense be available in bar to liability for its negligence in the control of its streets and other property, for which nearly all the courts admit liability. Damages arising from these causes may impose upon some towns and cities financial burdens as disastrous to the municipality as fires would occasion to other cities.

"The old argument that to admit liability would give rise to a multiplicity of suits is of trifling value. If there is a multiplicity of wrongs there should be a multiplicity of suits, and one and the same principle applies to allowing an action for any wrong. So then, the argument that it inconveniences the public to allow the action is of little force. The public does not feel the inconvenience, if it exists, and the individual who has suffered the loss can ordinarily less afford to bear it than the public. And without sufficient reason no individual should be deprived of his right that others must exercise reasonable care in all their actions so far as they affect him. This fundamental right requires that municipalities should respond in damages when they negligently injure individuals." Jones, Neg. Munic. Corp. sec. 58, page 112. Other reasons in this line are stated in Springfield Ins. Co. v. Reeseville, hereafter quoted. It seems to us that the reason for non-liability here criticised should never be given in any case which falls within the principles of law and equity that govern the rights and liabilities of parties and which if applied determine the rights of one with the corresponding liability of the other, and these reasons should never be urged in any court of law and equity, as they have no place there, but if at all reasons of merit, which is doubtful, should be addressed to the legislative branch of the government.

As relating to the views generally expressed in this opinion we refer to the following cases, which, if not directly, by analogy support our rulings. In reviewing the decisions of our own State attention is directed to the City of Galveston v. Posnainsky, 62 Texas, 124, a leading and well considered case upon the subjects discussed and one which is

generally cited with approval.   For this reason we quote at length from that case:

"The near approach of the close of the term makes it necessary that we content ourselves with a statement of what we understand to be the law on the question raised, as settled by the great weight of authority, and upon principle, in regard to the liability of a municipal corɩoration created by a special law, granting such powers as are given to the City of Galveston by its charter, and giving such means as are therein given to execute the powers, for damages to an individual, resulting from an injury received through the neglect of such a municipal corporation to keep in repair its streets, other public ways, sewers and like public works over which it is given full control by its charter.

"In this State such corporations are not made liable for injuries resulting from neglect, by any express statute; and if liable, they are so solely on the ground that the proper application of the principles of the common law makes them so liable.   To determine what the common law rule upon the subject is, we will refer to the great body of the common law decisions on this question, which for the reasons given, we cannot to any considerable extent review, but will to some extent cite; feeling that a conclusion thus reached will more likely be correct than the conclusion of a single court based upon such course of reasoning as it might pursue.

"It has often been held that no action lies against a subdivision of a State, created solely for a public purpose, by a general law, applicable to all such subdivisions, for an injury received by a person through the neglect of the officers of such subdivision, even though, by the general law, such subdivision may be given a quasi corporate existence, the better to enable it to perform the public service imposed by the law.

"The English cases, the cases in the New England States and in some of the other States in which such quasi municipal corporations exist, illustrate this rule.   Those cases are but the practical application and proper extension of the rule that a State cannot be made liable to an action for the neglect or misfeasance of its officers, through which a person sustains injury, unless by statute the action is given.

"In so far as a quasi corporation exercises powers exclusively public in their character, forced upon it without its consent, simply because the State can thus, through such local agencies, more easily and effectively discharge duties essentially its own, it is but proper that no action should be maintained against it for the negligence, or even misfeasance of its officers, unless the action be given by an expression of the same sovereign will which arbitrarily imposed the duty.

"The necessity for imposing, even on such quasi corporations, a liability for the negligence and misfeasance of their officers, and for giving actions against them, through which such liability may be enforced, has generally been felt, and hence statutes ordinarily have been enacted, fixing the liability and giving the action.

"The rule is very clearly presented in the case of Bigelow v. Inhabit-

ants of Randolph, 14 Gray, 543, in which the court said: 'It was said by Chief Justice Parsons half a century since, in Riddle v. Proprietors of Locks and Canals, 7 Mass., 187, and adjudged by a full court in Mower v. Inhabitants of Leicester, 9 Mass., 247, that a private action cannot be maintained against a town, or other quasi corporation, for a neglect of corporate duty, unless such action be given by statute. And so it has since been held by this and other courts. This rule of law, however, is of limited application. It is applied, in case of towns, only to the neglect or omission of a town to perform those duties which are imposed on all towns, without their corporate assent, and exclusively for public purposes; and not to the neglect of those obligations which a town incurs when a special duty is imposed on it, with its consent, express or implied, or a special authority is conferred on it at its request. In the latter cases, a town is subject to the same liabilities for the neglect of those special duties, to which private corporations would be if the same duties were imposed or the same authority were conferred on them—including their liability for the wrongful neglect as well as the wrongful acts of their officers and agents. See the cases referred to in Eastman v. Meredith, 36 N. H., 295; Conrad v. Trustees of Ithaca, 16 N. Y., 158.'

"The case of Eastman v. Town of Meredith is one of much interest upon the subject under consideration, and may be consulted with much profit, as may the following cases and authorities: Rowe v. Portsmouth, 56 N. H., 291; Commissioners v. Duckett, 20 Md., 469; Commissioners v. Gibson, 36 Md., 229; Commissioners v. Baker, 44 Md., 1.

"The tendency of the decisions is evidently to recognize the liability of even quasi corporations to suit not expressly given by statute, when injury results from the negligence of officials or agents exercising powers purely ministerial in reference to matters which cannot be said to pertain to duties purely public; to matters which, though in a restricted sense, are public, yet more directly affect the welfare and pecuniary interest of the inhabitants of the quasi corporation, upon whose will rests the determination whether the given act shall be performed and how it shall be performed, and upon whom rests solely the expense of the work put in operation by themselves, through which, at least indirectly, they receive benefit in which the general public, if at all, but slightly participates.

"Counties and like quasi corporations are created by the Legislature by general laws without reference to the wish of their inhabitants, and thus for essentially public purposes.

"Not so with towns and cities which are incorporated through special charters, which, like most special laws, are exacted at the request of those who are to be most directly benefitted by them and with a view to this end.

"The one is created for a public purpose as an agency of the State, through which it can most conveniently and effectively discharge the

duties which the State, as an organized government, assumes to every person, and by which it can best promote the welfare of all.

"The other, while to a given extent created for a public purpose, is so mainly for the reason that the existence of large towns and cities makes a system or degree of police there necessary which is not so in villages nor with a rural population; but the main and essential purpose for which they are created is the advantage of the inhabitants of the corporation, and in so far as such corporations receive and exercise powers other than such as would be exercised by the State in and through the county organizations, this is essentially true.

"Counties are declared by the laws of this State to be corporations; and they are municipal corporations in the sense that they are agencies 'to regulate and administer the internal concerns of the locality in matters peculiar to the place incorporated, and not common to the State or people at large,' but at the same time the State makes use of the corporation, and of its property, such as jails and court houses, and of its officers, to exercise power not strictly municipal, but in fact State powers, exercised for the State through the local officers within prescribed territorial limits.    1 Dillon Munic. Corp., 93.

"Counties are created by general laws, and while they are municipal corporations in a restricted sense, they are involuntarily so, and sustain to the State a relationship which a town or city incorporated does not sustain.    They are created to carry out a policy common to the whole State, and not mainly to advance the interest of the particular locality, and to bring advantage or emolument to the inhabitants of the municipality.

"It would seem that, in so far as municipal corporations of any class, and however incorporated, exercise powers conferred on them for purposes essentially public—purposes pertaining to the administration of general laws made to enforce the general policy of the State,—they should be deemed agencies of the State, and not subject to be sued for any act or omission occurring while in the exercise of such power, unless, by statute, the action be given; that, in reference to such matters, they should stand as does sovereignity whose agents they are, subject to be sued only when the State, by statute, declares that they may be.

"How far counties, as municipal corporations, if at all, may be liable for injuries resulting from misfeasance or neglect, it is unnecessary in this case to inquire.

"In so far, however, as they exercise powers not of this character, voluntarily assumed—powers intended for the private advantage and benefit of the locality and its inhabitants,—there seems to be no sufficient reason why they should be relieved from that liability to suit and measure of actual damage to which an individual or private corporation exercising the same powers for a purpose essentially private would be liable.

"Persons and corporations that voluntarily assume and undertake the performance of a work, even though it be quasi public in its character,

ought to be held to impliedly contract that they will exercise due care in its performance, and for a neglect in this respect should be liable for the resulting damage.

"We do not wish, however, to be understood to assert that there is a contract between the State and a municipal corporation accepting a charter, but simply to assert that, when such a corporation accepts a charter giving defined powers, the law imposes the duty of faithfully exercising them, and gives an action for misfeasance or neglect in this respect to any person who may be injured by such failure of duty.

"After having considered the true nature and liabilities of counties, towns, townships, boroughs, school districts, road districts and other organizations existing in some of the States, under general laws for the performance of public duties, as a part of the machinery of the State government, Judge Cooley thus speaks of municipal corporations accepting special charters from the State: 'The reason which exempts these public bodies from liability to private actions based upon neglect to perform public obligations, does not apply to villages, boroughs and cities which accept special charters from the State. The grant of the corporate franchise, in these cases, is usually made only at the request of the citizens to be incorporated, and it is justly assumed that it confers what to them is a valuable privilege. This privilege is a consideration for the duties which the charter imposes. Larger powers of self-government are given than are confided to towns or counties; larger privileges in the acquisition and control of corporate property; special authority is conferred to make use of the public highways for the special and peculiar convenience of the citizens of the municipality in various modes not permissible elsewhere.

" 'The grant by the State to the municipality of a portion of its sovereign powers, and their acceptance for these beneficial purposes, is regarded as raising an implied promise on the part of the corporation to perform the corporate duties, and as imposing the duty of performance, not for the benefit of the State merely, but for the benefit of any individual interested in its performance.

" 'In this respect these corporations are looked upon as occupying the same position as private corporations, which have accepted a valuable franchise on condition of the performance of certain public duties, are held by the acceptance to contract for the performance of those duties. In the case of public corporations, however, the liability is contingent on the law affording the means of performing the duty, which, in some cases, by reason of restriction upon the power of taxation, they might not possess. But assuming the corporation to be clothed with sufficient power by the charter to that end, the liability of a city or village, vested with control of its streets, for any neglect to keep them in repair, or for any improper construction, has been determined in many cases.

" 'And a similar liability would exist in other cases where the same reasons would be applicable.'

"The Supreme Court of the United States, in a number of cases, has

held that municipal corporations with powers no broader, means no greater, and duty not more clearly imposed, than we find in the charter of the city of Galveston, are responsible for injuries which result from neglect to keep streets and other like public works in repair. Weightman v. City of Washington, 1 Black, 39; Chicago v. Robbins, 2 Black, 418; Mayor v. Sheffield, 4 Wall., 189; Evanston v. Gunn, 99 U. S., 660; Barnes v. District of Columbia, 91 U. S., 551. In the case last cited the court uses the following language: 'It is denied that a municipal corporation (as distinguished from a corporation organized for private gain) is liable for the injury to an individual arising from negligence in the construction of a work authorized by it. Some cases hold that the adoption of a plan of such a work is a judicial act; and if injury arises from the execution of that plan, no liability exists. Child v. City of Boston, 4 Allen, 41; Thayer v. Boston, 19 Pick., 511. Other cases hold that for its negligent execution of a plan good in itself, or for mere negligence in the care of its streets or other works, a municipal corporation cannot be charged. City of Detroit v. Blackeby, 21 Mich., 84, is of the latter class, where it was held that the city was not liable for an injury arising from its neglect to keep its sidewalks in repair.

" 'The authorities establishing the contrary doctrine, that a city is responsible for its mere negligence, are so numerous and so well considered that the law must be deemed to be settled in accordance with them. English authorities: Mayor v. Henley, 2 Clark & Fin., 331; Mersey Docks v. Gibbs; Same v. Penhallow, 1 H. Ld. Cas. (N. S.), 93; 7 H. & N., 439; Lan. Canal Co. v. Parnaby, 11 Ad. & Ell., 223; Scott v. Mayor, 37 Eng. Law & Eq., 495. United States authorities: Weightman v. Washington, 1 Black, 39; Nebraska City v. Campbell, 2 Id., 590; Robbins v. Chicago, 4 Wall., 658; Supervisors v. United States, Id., 435; Mayor v. Sheffield, Id., 194. New York: Davenport v. Ruckman, 37 N. Y., 568; Requa v. Rochester, 45 N. Y., 129; Rochester W. L. Co. v. Rochester, 3 Id., 463; Conrad v. Ithaca, 16 Id., 158; Barton v. Syracuse, 36 Id., 54. Illinois: Browning v. City of Springfield, 17 Ill., 143; Clayburgh v. City of Chicago, 25 Id., 535; City of Springfield v. Le Claire, 49 Id., 476. Alabama: Smoot v. Mayor of Wetumpka, 24 Ala. (N. S.), 112. Connecticut: Jones v. City of New Haven, 34 Conn., 1. North Carolina: Meares v. Wilmington, 9 Ired., 73. Maryland: County Commissioners of Anne Arundel County v. Duckett, 20 Md., 469. Pennsylvania: Pittsburg City v. Grier, 22 Pa. St., 54; Erie City v. Schwingle, Id., 388. Wisconsin: Cook v. City of Milwaukee, 24 Wis., 270; Ward v. Jefferson, Id., 342. Virginia: Sawyer v. Corse, 17 Gratt., 241; City of Richmond v. Long, Id., 375. Ohio: Western College v. Cleveland, 12 Ohio St., 377; McCombs v. Akron, 15 Ohio, 476; Rhodes v. Cleveland, 10 Id., 159.'

"The following cases and authorities maintain the same proposition: Bailey v. Mayor, etc., 3 Hill, 538; Mayor, etc. v. Furze, 3 Hill, 612;

Weet v. Brockport, 16 N. Y., 161n; Lloyd v. Mayor, etc., 1 Seld., 374; Storrs v. City of Utica, 17 N. Y., 104; Ring v. City of Cohoes, 77 N. Y., 83; Noonan v. City of Albany, 79 N. Y., 470; McCarthy v. City of Syracuse, 46 N. Y., 194. Illinois: City of Lacon v. Page, 48 Ill., 499; City of Champaign v. Patterson, 50 id., 62; City of Bloomington v. Bay, 42 id., 503; City of Sterling v. Thomas, 60 id., 265; White v. County of Bond, 58 id., 298; Town of Waltham v. Kemper, 55 id., 346. Alabama: Albritton v. Mayor, 60 Ala., 486. Wisconsin: Kenworthy v. The Town of Ironton, 41 Wis., 647; Milwaukee v. Davis, 6 Wis., 377. Virginia: Noble v. The City of Richmond, 31 Gratt., 271. Ohio: City of Dayton v. Pease, 4 Ohio St., 94. Indiana: City of Logansport v. Wright, 25 Ind., 513. Missouri: Blake v. City of St. Louis, 40 Mo., 570; Murtaugh v. The City of St. Louis, 44 id., 480. Michigan: Dewey v. City of Detroit, 15 Mich., 311. Connecticut: Jones v. City of New Haven, 34 Conn., 1. Minnesota: Kobs v. City of Minneapolis, 22 Minn., 160; Simmer v. City of St. Paul, 23 Minn., 408. Tennessee: Mayor, etc., v. Lasser, 9 Humph., 757. Georgia: Mayor, etc., of Savannah v. Waldner, 49 Ga., 316. Louisiana: O'Neil v. City of New Orleans, 30 La. Ann., 220. New Hampshire: Wheeler v. Troy, 20 N. H., 80; Gilman v. Laconia, 55 N. H., 130. Iowa: Wallace v. City of Muscatine, 4 G. Greene (Ia.), 373. Massachusetts: Child v. City of Boston, 4 Allen, 52; Oliver v. Worcester, 102 Mass., 489.

"In the last case cited, the court thus clearly stated the rule: 'The distinction is well established between the responsibilities of towns and cities for acts done in their public capacity in the discharge of duties imposed upon them by the legislature for the public benefit, and for acts done in what may be called their private character, in the management of property or rights voluntarily held by them for their own immediate profit or advantage as a corporation, although inuring, of course, ultimately to the benefit of the public.

" 'To render municipal corporations liable to private actions for omissions or neglect to perform a corporate duty imposed by general law on all towns and cities alike, and from the performance of which they derive no compensation or benefit in their corporate capacity an express statute is doubtless necessary * * *.

" 'But this rule does not exempt towns and cities from the liability to which other corporations are subject, for negligence in managing or dealing with property or rights held by them for their own advantage or emolument. Thus, where a special charter, accepted by a city or town, or granted at its request, requires it to construct public works, and enables it to assess the expense thereof upon those immediately benefited thereby, by way of tolls or otherwise, the city or town is liable, as any other corporation would be, for an injury done to any person in the negligent exercise of the powers so conferred.' See, also, Dillon on Municipal Corporations, 764; Cooley on Torts, 625; Cooley's Con. Lim., 303; Wharton on Negligence, 956 et seq.; Shearman and Red-

field on Negligence, 125-133; Thompson on Negligence, 731-768, in which the cases bearing on the question are collected.

"The character of corporate existence possessed by New England towns and cities, not existing under special charters, is very fully considered by Judge Dillon in his work on Municipal Corporations, 11-14, 763-796; and in the cases cited from those States, the decisions are all affected by the fact that the towns, cities or counties possessed only such corporate powers as were given to all such corporations by general laws, and were not municipal corporations created by special charters, at the wish of the inhabitants. This is true in the following cases: Oliver v. Worcester, 102 Mass., 490; Chidsey v. Canton, 17 Conn., 478; Reed v. Belfast, 20 Me., 248; Baxter v. Turnpike Co., 22 Vt., 114; Mower v. Leicester, 9 Mass., 247; Providence v. Clapp, 17 How., 161. Several of these cases, however, recognize the common law liability of municipal corporations created by special charter.

"Chosen Freeholders v. Strader, 3 Harr. (N. J. L.), 108; Cooley v. Chosen Freeholders of Essex, 3 Dutch., 415, and Livermore v. Chosen Freeholders of County of Camden, 29 N. J. L., 245, are all cases in which injury resulted from failure to keep in repair county bridges, and were decided on the same grounds as the New England cases.

"The case of Pray v. The Mayor, etc., 32 N. J. L., 394, probably rests on the same grounds, but the report of the case does not render this certain; but as the cases above referred to are given as authority for the decision, we take this to be true.

"Brinkmeyer v. City of Evansville, 29 Ind., 187, decides that a city, incorporated by special charter, is not responsible for property destroyed by fire, where the city had not exercised such legislative or judicial power as it might have exercised under its charter; but in the opinion the court recognized the liability of a municipal corporation for injury resulting from its neglect to keep in proper repair streets which had been opened, in the following language: 'There is but little, if any, analogy between the powers and duties devolving on these municipal governments in the organization of a fire department and those in relation to the improvement of streets and the construction of bridges, culverts and sewers. A street, when improved, is a public highway, open to the free use of all; and it is an old and well established principle that a corporation is bound to keep it in proper repair or condition, and is responsible for the damage caused by a neglect of that duty.'

"Duke v. Mayor, etc., of Rome, 20 Ga., 635, only decides that a municipal corporation is not liable for an error of judgment by a mayor and council in refusing to grant a license.

"In City of Richmond v. Long, 17 Gratt., 375, it was held that the city was not liable for the value of a slave placed in the city hospital to be treated for small pox who escaped therefrom and came to his death by exposure; and so, because the city in establishing the hospital seems to have acted under a general law which was intended to provide means to prevent the spreading of contagious diseases, the servants of the city

in this respect being considered public officers for whose neglect the city was not responsible.

"Prather v. City of Lexington, 13 B. Monroe, 559, and Western College v. City of Cleveland, 12 Ohio St., 375, only decide that a municipal corporation is not responsible for property within its territorial limits destroyed by a mob.

"Dargan v. Mayor, etc., 31 Ala., 469, simply holds that a municipal corporation having authority under its charter to pass ordinances forbidding slaves to be abroad at night or to assemble together without lawful permission, was not liable, at the suit of an owner, for the loss of a slave who was negligently killed by an officer of the city guard in attempting to arrest him for a breach of such ordinance.

"The English cases referred to in the brief of counsel for appellant are either cases not against municipal corporations incorporated by special charter, or cases in which the liability of heads of departments of the government, for the defaults or neglects of persons appointed by them, was under consideration.

"The case of Detroit v. Blackeby, 21 Mich., 84, goes to establish fully the non-liability of municipal corporations for injury resulting from neglect to keep streets in repair; but it cites for its support a line of decisions which to us seem not the most applicable, and ignores the line of English and American cases to which we have partially referred in support of an opposite rule; besides, the case is much weakened by the dissenting opinion of Judge Cooley, and it seems to be in conflict with the decision of the same court in Dewey v. City of Detroit, 15 Mich., 311.

"In the case of City of Navasota v. Pearce, 46 Texas, 527, much of the reasoning of the court would lead to the same result as that reached in the case of Blackeby v. Detroit; but in the case it does not appear that the streets of the city of Navasota were not in good repair, nor that the ditch into which the horse fell was within the street over which the city, by its charter, was given control nor so near to the street as to make it the duty of the city to erect protection against it; nor does it appear that there was any want of due care in the city. We cannot now have access to the transcript to ascertain what the facts really were; but we know from the opinion itself that it was not intended to lay down the broad rule that a municipal corporation, created by a special charter, or by the voluntary action of the inhabitants of a given territory, under the laws of this State, which permit incorporation under the general law enacted for that purpose, is not liable to an action for an injury which may result from the neglect of such corporation to keep its streets in proper repair; for the opinion in the case expressly limits its application to the very case then before the court. That such corporations in many respects may be responsible for their neglects or misfeasances is recognized in Peck v. City of Austin, 22 Texas, 265. The question involved is incidentally noticed in Keller v. Corpus Christi, 50 Texas,

628, and in Conway v. City of Beaumont, decided at last Galveston term (61 Texas, 10).

"The question is one to be decided by the application of common law principles, and to ascertain what those principles are, we can and ought to resort to common law authorities, and doing so, to our minds, the weight of authority holding that such a corporation, created by special charter, is liable for an injury resulting from its neglect to keep its streets in repair, is so overwhelming that we feel constrained to hold the law so to be, and that an action lies for such an injury without its being expressly given by statute."

In Ysleta v. Babbitt, 28 S. W. Rep., 703, it is held that when a city voluntarily undertakes to furnish water for irrigation purposes, to the public, by virtue of article 374, Sayles' Civil Statutes—the same provision of law under which the appellee is operating its water-works—and wrongfully withholds water from a consumer, it is liable therefor in tort.

In Aaron v. Broiles, 64 Texas, 316, it is held that a city has the undoubted right, under its legislative authority, to enact and enforce an ordinance to remove from the limits of the city persons afflicted with contagious diseases, and that such a right cannot be questioned; but that the act of removing such persons is ministerial and must be done with due care, otherwise the city will be liable if injury results through its negligence.

In City of Fort Worth v. Crawford, 74 Texas, 404, the city was held liable for the negligent manner of keeping its dump-yard, by reason of which the noxious odors arising therefrom caused sickness.

In City of Austin v. Emanuel, 74 Texas, 623, the city was held liable for its negligence in constructing a bridge, by reason of which water was diverted from the stream and destroyed plaintiff's property.

In Gross v. City of Lampasas, 74 Texas, 195, the court holds that a city will be liable for its negligence to one whose property is injured in draining its streets. In keeping with these cases are Barber v. City of East Dallas, 83 Texas, 148; City of Hillsboro v. Ivy, 1 Texas Civ. App., 654; Shelley v. City of Austin, 74 Texas, 611; City of Houston v. Bryan, 2 Texas Civ. App., 554; Klein v. City of Dallas, 71 Texas, 284; Galveston v. Hemmis, 72 Texas, 559; Baugus v. City of Atlanta, 74 Texas, 629; City of Sherman v. Nairey, 77 Texas, 291; City of Sherman v. Williams, 77 Texas, 310; 25 S. W. Rep., 978; 25 S. W. Rep., 1131; 25 S. W. Rep., 669; 21 S. W. Rep., 634; 29 S. W. Rep., 1139; 27 S. W. Rep., 292; 32 S. W. Rep., 186; 32 S. W. Rep., 39.

Turning to the decisions of other courts we note the case of Springfield Ins. Co. v. Keeseville, 80 Hun., 166, and as this case is so full upon the questions discussed, and is so directly in point, we will quote what is principally said by the court:

"Municipal corporations possess two kinds of power, one governmental and public, and the other corporate or private; the first is given and used for public purposes, and in the exercise of those powers it acts

as a municipal corporation; the last is given for corporate purposes, and in the exercise of such powers it acts as a private corporation or individual. Lloyd v. Mayor, 5 N. Y., 369; Maximilian v. Mayor, 62 id., 160; Ham v. Mayor, 70 id., 459.

"Where the service is being performed for the public good, in obedience to law, and is one in which the municipality has no particular interest, and from which it derives no particular benefit in its corporate capacity, the municipality is not liable for the improper or negligent performance of that service. Maximilian v. Mayor, 62 N. Y., 160; Smith v. City of Rochester, 76 id., 506; Ham v. Mayor, 70 id., 459; Bieling v. City of Brooklyn, 120 id., 98-106.

"The municipality is not responsible for the acts of the officers or agents performing such public services, although such officers and agents are designated by the municipality; the maxim respondeat superior does not apply. Maxmilian v. The Mayor, supra.

"As to those powers and duties which are private corporate powers and duties, and are not for the benefit of the general public a municipal corporation is regarded as a legal entity, and is responsible for its omission to perform its corporate duties to the same extent that a natural person would be under the same circumstances. Conrad v. Ithaca, 16 N. Y., 158-72; N. Y. & B. S. M. & L. Co. v. City of Brooklyn 71 Id., 580; Platz v. City of Cohoes, 89 Id., 219.

"It is sometimes exceedingly difficult to draw the distinction between what are public and what are private corporate powers and duties.

" 'The administration of justice, the preservation of public peace and the like, although confided to local agencies, are essentially matters of public concern; while the enforcement of municipal by-laws proper, the establishment of gas-works and water-works, the construction of sewers and the like, are. matters which pertain to the municipality as distinguished from the State at large.' Dillon on Mun. Corp. (3rd ed.) sec. 58.

"The supplying of water by municipal corporations is not a public function; it is purely a matter of private business. Matter of Long Island Water Supply Co., 30 Abb., N. C., 36. The general public have no interest in it, it is purely a local matter, exclusively for the benefit of the village.

"When the water-works are constructed they belong to the village, the people of the village pay for them, and ordinarily receive rentals for supplying water. Fleming v. Village of Suspension Bridge, 92 N. Y., 368; Pettengill v. City of Yonkers, 116 Id., 558.

"And in Bailey v. Mayor, 3 Hill, 531, it was held that the powers granted by the act providing a supply to the city of New York with pure and wholesome water were intended for the private advantage and emolument of that city, the State in its sovereign capacity having no interest in it, and that, therefore, the city was liable for the negligent construction of the dam by the employes of the water commissioners.

"While this case has been criticised in some respects, in several cases,

such as in Darlington v. Mayor, 31 N. Y., 164, the principle decided has never been overruled or departed from, but has been approved in Walsh v. Bridge Trustees, 96 N. Y., 427; Ehrgott v. Mayor, 96 Id., 264, and the same principle has been maintained by the elementary writers.

" 'In regard to all those powers which are conferred upon the corporation, not for the benefit of the general public, but of the corporators, such as the power to construct works to supply a city with water or gas-works, or sewers, and the like, the corporation is held to a still more strict liability, and is made to respond in damages to the parties injured by the negligent manner in which the work is constructed or guarded, even though, under its charter, the agents for the construction are not chosen or controlled by the corporation, and even where the work is required by law to be let to the lowest responsible bidder.' Cooley's Const. Lim. (3d ed.), 249; Beach's Pub. Corp. sec. 1140.

"The complaint must be read in connection with the statutes governing the defendant; they are as much a part of the complaint as if written in it. The defendant was authorized by chapter 181 of the Laws of 1875, and various acts amendatory thereof, to construct and maintain water-works to supply its inhabitants with water. The president and trustees constitute the board of water commissioners. Chap. 74, Laws of 1891. The defendant receives rents for supplying water; it has control over all the employes connected with the water-works; it can employ and discharge them at pleasure; they are its servants. The construction and maintenance of the water-works is something that was not forced upon it by the power of the State; it could act under the law authorizing it to construct and maintain water-works, or refuse to act, at its pleasure; but having accepted the power and authority granted, it became responsible for the proper exercise of such powers. Cain v. Syracuse, 95 N. Y., 83.

"Considerable stress was laid in the trial court upon the burdens that would be thrown upon municipalities by holding them responsible in damages in cases like the one before us; while I am not insensible to such considerations, and while perhaps the court may properly give weight to them, in arriving at its determination as to what the law is, still it seems to me that it would be going too far to hold that where a municipal corporation receives money for the support and maintenance of its water-works, has absolute power to employ and discharge the men necessary to care for and maintain such department, it shall in no case be held liable for damages resulting from employing incompetent men, and for knowingly and negligently permitting its water-works, mains and pipes to become and remain out of repair and unfit for service.

"To so hold would remove one great incentive to furnishing an efficient water service. Ordinarily, where there is no responsibility there is an inefficient public service. Every administration in charge of a municipality is anxious for public approval; that approval largely depends upon the tax rate; and to hold municipalities responsible in damages for any lack of reasonable care and diligence in maintaining their

public works, which results in injury to property, will result in increased diligence to prevent any increase in the municipal charges.   Municipalities, like individuals, are very sensitive to attacks upon the purse.   Increased pecuniary responsibility begets increased care and diligence.

"It seems to me that, in matters like these we are now considering, it is no hardship, but on the contrary it will result in a more efficient public service, if municipal corporations are held responsible for the same degree of care and diligence that they are held to in respect to streets and sewers—as expressed by Chief Justice Andrews:   'The language of the cases expressing the measure of duty resting upon a municipal corporation in respect to its streets, sewers, etc., has not always been carefully guarded, but the doctrine has been frequently reiterated in this court that there is no absolute guaranty or undertaking on the part of a municipal corporation that its streets or other constructions shall at all times and' under all circumstances be in a safe and proper condition, and that its obligation and duty extend only to the exercise of reasonable care and vigilance.   There must be willful misconduct or culpable neglect to create liability.'   Hunt v. The Mayor, 109 N. Y., 135.   See also, Danaher v. Brooklyn, 119 id., 241.

"The water to be supplied by the defendant, and for which the plaintiff and its assignor contributed to pay, was, amongst other things, for the purpose of extinguishing fires, and it seems to me that where a person can prove that by the willful misconduct or culpable neglect of the defendant, he was prevented from the use of water for such purpose, whereby he has been damaged, he establishes a cause of action.   The complaint here is broad enough to permit evidence of willful misconduct or culpable neglect; which being proved, it seems to me would entitle the plaintiff to recover.

"This is not a case where there is simply an inadequate supply of water, but one where, by the mismanagement and neglect of the municipal authorities, the plaintiff's assignor has been prevented from using the water that was otherwise to be had, that she had paid to receive, and that the defendant had, impliedly at least, contracted to furnish.

"The case of Danaher v. Brooklyn (supra) was an action to recover damages for injuries occasioned by drinking impure water at a public well in said city. The court there said: 'This water was not furnished for a compensation paid for its use; there was no contract relation between the city and those who used it.   The well was for public gratuitous use * * * It owned this well as it owned its other property kept for public use, such as streets, parks and public buildings, and it owed the duty of reasonable diligence to care for it as it was bound to care for such other property.   Its liability for unwholesome water in any of its public wells must rest upon negligence.'

"The city was held not liable, because there was no evidence of negligence on its part in caring for the well, but the prevailing opinion held that it was undoubtedly the duty of the city to keep wells and pumps in good order.   Keep them in good order for what purpose?   To supply

good and wholesome water for potable purposes; that was the function to be performed by the wells and pumps. The function to be discharged by the water-works of the defendant is, among others, to furnish water to extinguish fires; it is the duty of the defendant to keep them in such condition that they may discharge that function.

"There may be a distinction between those cases where the injury complained of would not have happened but for the municipality undertaking to exercise a power, and negligently exercising it, so as to create a dangerous condition which would not otherwise exist—as to dig and maintain wells, and allowing the water to become unwholesome and poisonous; or to erect a dam and negligently maintain it; or by its negligent care of water-works, letting water escape so as to undermine a street—and those cases where the same danger would exist, and the same injury result, if the municipality had never assumed to exercise the power in question.

"Danger from fire always exists, and lack of water to extinguish it, resulting in damage, is no new condition of danger created by the defendant. But when the defendant assumed the power of erecting and maintaining water-works, it assumed a two-fold obligation—one not to create any new source or condition of danger by the negligent exercise of such power, and the other to remove, or at least diminish, existing conditions or sources of danger, such as danger from fire. The first duty, that of not creating any new conditions of danger, it owes to all the world; the second, the removal or diminishing of existing conditions or sources of danger, it does not, perhaps, owe to the general public, but only to those who contribute to pay the expense of exercising such powers.

"In the Danaher case (supra) the court, it will be observed, laid stress upon the fact that in that case there was no contractual relation between the city and the parties using the water; that it was gratuitously furnished. In this case the facts are directly contrary. The water is not furnished gratuitously by the defendant. The water-works of the defendant are not supported and maintained by general taxation, but by rents, which rents are measured to a certain extent by the needs of the persons using the water and the amount consumed by them. The water commissioners are authorized to establish a scale of rents to be charged and paid to them 'for the supply of water to be called water rents, and appropriated to different classes of buildings in said village, in reference to their dimensions, values, exposure to fires, ordinary or extraordinary uses for dwellings, stores, shops, hotels, factories, livery stables, barns and all other buildings, establishments and trades, yards, number of families or occupants or consumption of water as near as may be practicable.' Section 13, chapter 181, Laws of 1875. The rents are to be paid to them 'for the supply' of water. One of the things to be taken into consideration in determining the amount of such rentals is the exposure to fire of the building to be supplied with water, and, as I think may be a fair interpretation, the value of the protection from fire af-

forded by the water supply.   In other words, the water rent payer pays for water to be used in case of fire to save him from loss and damage. And it seems to me that where a person pays that rent he has some rights, and the defendant is under some obligation to him.

"As we have seen before, when a municipal corporation assumes or accepts powers and duties that are not public in their nature, it is to be treated in relation to those powers and duties in the same way as a business corporation or a natural person would be.   If a business corporation or natural person had made a charge for furnishing water, and had accepted payment of that charge, we would consider that a contract to furnish water to the person paying.   And if that business corporation, by sheer mismanagement, the employment of incompetent men, and by negligence, had prevented the use of the water it had agreed to supply, when it was most needed, the courts, I think, would hold such corporation or person liable for the direct resulting damages.

"The defendant has gone into the water supply business; it is a private corporate business, conducted for its own benefit, and not for the general public; and it would seem to legitimately follow from the different responsibilities recognized by the courts of the State for acts done by municipal corporations in the discharge of duties that are public in their nature and those that are only for the benefit of the particular municipality, that the defendant is liable as for a breach of contract.

"While such a conclusion seems to result naturally from the principles of the cases I have referred to, still I think it is not entirely a correct one.   The defendant after all is a purely public corporation; all the powers it has are for the public benefit; some for the general public; some for the public within its boundaries.   It is not a corporation conducted for pecuniary gain or profit, and should not be held to the same strict accountability as one conducted entirely for gain; it should not be regarded as an insurer or guarantor.   But a public corporation having agreed to erect and take charge of a public work or enterprise for the people within its boundaries, those who contribute of their means to the erection and maintenance of such public work have a right to demand from the corporation reasonable care and diligence in maintaining it, so that it will discharge the functions for which it is created and for which the contributors pay, and to hold it liable for a lack of such care and diligence.   That, I think, can fairly be held to be the nature of the implied contract between the water rent payer and the defendant.

"This duty and obligation the defendant, by its demurrer, admits that it failed to perform.   It admits that it 'wrongfully and negligently allowed and caused its said water-works, pumps, pipes, and fire appliances to become and to be out of repair, broken and weakened, stopped both with mud and other foreign objects, and unfit for use to such extent that water could not be thrown or put upon said dwelling house to extinguish the fire therein.'   And it admits that 'if said fire appliances and water-works had been in proper working order, said fire could and would have been extinguished without damaging said house to exceed

three hundred dollars.' The plaintiff alleges and the defendant admits that it 'employed incompetent and unfit men to care for and maintain its said water-works and fire appliances.' The plaintiff alleges and the defendant admits that the plaintiff's loss of $4,140 'was caused solely by the negligence and wrongful and unlawful acts of defendant in failing to keep its water-works and fire appliances in proper working order, and in failing to employ competent men to manage and care for the same.' These allegations and admissions of negligence and of wrongful and unlawful acts, resulting in injury to plaintiff and its assignor, are very broad, and to hold that they do not constitute a cause of action is practically to hold that there is no responsibility attached to municipal corporations, no matter how culpably or willfully negligent they may be in discharging corporate duties they have voluntarily assumed to discharge, and that there is no penalty for the unfaithful discharge of such obligations, unless some official performs some overt act which rises to the dignity of a crime. It seems to me that the complaint sets forth a cause of action and that the demurrer should be overruled.

"I have examined the authorities of other States cited upon the brief of counsel and others. This discussion has already extended so far that I do not desire to prolong it, neither do I see that any profit can be gained by a discussion of those cases. Some of them are in States where there is no municipal liability except that derived from statute. Some arose out of the negligent acts of the officials of the fire department, and it was held that officers of the fire department were not the agents or servants of the municipality, for whose negligence it was liable; in others no distinction is made between powers conferred and duties performed for the welfare of the general public and those that are corporate in their nature, a distinction which, as we have seen, is well recognized in this State; in some there was an inadequate supply of water; in others it turned upon the exercise of the discretion of the authorities in the location of apparatus. Special features distinguished those cases from this.

"There are also some cases directly in conflict with the views herein expressed.

"It is sufficient to say that after a consideration of the views of the courts in the various cases referred to, it seems to me that where the issue is purely one of negligence, the conclusion at which I have arrived as to this complaint is in consonance with the principles relating to municipal liability recognized by the courts of this State, although, so far as can be gathered from the reported cases, never before applied in an action like the one now sought to be maintained."

It is true that this case was not approved by the Court of Appeals of New York, and in reviewing it, that court held that the town was not liable. 42 N. E. Rep., 405. And the reasons there given for this ruling are,—that to admit liability in such cases would involve cities in financial difficulties, and on the further ground that maintaining such works and operating them are public governmental functions. As pre-

viously stated in our opinion, these reasons are not sound. In Chalkly v. City of Richmond, 14 S. E. Rep., 341, it is held that the authority to establish a sewer is a matter of legislative discretion, but the duty to maintain it in repair when once constructed is ministerial, and that a city is liable for such neglect. The same is held in Wessman v. City of Brooklyn, 16 N. Y. Supp., 97. In City of New Albany v. Ray, 29 N. E. Rep., 611, the city by negligently digging a hole in a public alley caused water to collect and overflow plaintiff's premises. The city was held liable upon the ground that it was in the performace of a corporate duty. In Barron v. City of Detroit, 54 N. W. Rep., 273, it is held that when a city under the provisions of its charter erects a market place it is exercising a private and proprietary right and is held to the same degree of care as an individual and will be held liable for negligence to the same extent.

In City Council of Augusta v. Hudson, 88 Ga., 605, where the city controlled a bridge across the Savannah River, and the plaintiff was injured by negligent failure of the city to provide a suitable railing to the abutment, the court said: ''So far as keeping and maintaining this bridge for gain is concerned, this corporation entered the State of South Carolina to engage in a private business and enjoy the profits thereof, consequently it must perform the duties and assume the burdens incident to carrying on this business.''

In Stoddard v. Town of Winchester, 32 N. E. Rep. (Mass.), 948, the superintendent of the water-works of the city was placed in charge of laying pipes along the streets. It was held that the superintendent was the agent of the city in performing the work and that the city was liable for injuries resulting from his negligence.

In Kiesel v. Ogden City, 30 Pac. Rep., 759, when the city constructs a sewer and negligently permits it to become obstructed when under its care it is liable. The duty to keep it in repair is ministerial, although to originally construct it may be a legislative or discretionary function.

In Allen v. City of Boston, 34 N. E. Rep., 519, it is held that the city is liable for its negligent omission to keep a sewer in safe condition.

In McCord v. The City of Pueblo, 36 Pac. Rep., 1109, where the city was authorized to construct ditches, drains and sewers, the manner of constructing them and keeping them in repair is ministerial; and quoting from Dillon, Mun. Corp., sec. 1048, they say: ''It is agreed that whenever the duty as respects drains and sewers ceases to be legislative or quasi judicial and becomes ministerial then, although there is no statute giving the action, a municipal corporation is liable to the same extent and on the same principles as a private person or corporation would be under like circumstances for the negligent discharge or negligent omission to discharge such duty resulting in an injury to the others.''

In Greenwood v. Town of Westport, 62 Conn., 575, it is held that

where the drawbridge is under the control of the town it would be liable for its negligence in the manner in which it is used.

In City of Valparaiso v. Cartwright, 35 N. E. Rep., 1051, it is held that a city is liable for not keeping its drains and sewers in repair.

In Coan v. City of Marlborough, 41 N. E. Rep., 238 (Mass.), it was contended that a sewer which was constructed by the city for the public use, but which was for the benefit and gain of the city, was a public duty and work for the benefit of the public, and therefore the city was not liable; but it was held that when the city voluntarily assumed the duty of building the sewers, it rested under the duty to maintain them and would be liable for its negligence in not so doing.

In City of Augusta v. Hudson, 21 S. E. Rep., 290; 94 Ga., 135, it is held that the city must use ordinary care to keep a bridge for which it exacts toll, under its control, in repair; and this duty included the duty of repairing its approaches and abutments, and carried with it a corresponding liability for non-repair and for being out of repair, citing 1. Thomp. Neg., sec. 11, pp. 317, 563, 564; 2 Thomp. Neg., 770.

In Stephani v. City of Manitowoc, 62 N. W. Rep., 176, where a city maintains a drawbridge as a part of its street and fails to make the bridge reasonably safe by providing barriers and lights, it is liable for injuries sustained by one by reason of such neglect.

In Cochrane v. City of Frostburgh, 31 Atl. Rep., 706., it is held that a city having the power to exercise privileges for the benefit of the public, the duty rests upon it to do so, and for such failure, if negligent, it is liable to one who has sustained damages thereby.

In Bodge v. Philadelphia, 167 Pa. St., 494, the city by certain grants and privileges, regulated by ordinances, derived an annual revenue from the manufacture of electricity. In an action in which the city was held liable for the negligent conduct of one of the employes of said electrical concern, the court says: "In the performance of municipal duties for the benefit of the city the employees of the bureau are in fact the servants of the city in like manner as are the employees of its water department;" and quoting from Philadelphia v. Gilmartin, 71 Pa. St., 140-158, says: "When a municipal corporation transacts business as a vendor and distributor of water, the relation of her employees is that of servants to her, and the maxim respondent superior applies to their acts and negligence in conducting their business;" and quoting from Kibele v. Philadelphia, 105 Pa. St., 41-45, says: "The city as a manufacturer and vendor of gas was bound to know all about its character, and to take care that, through the default of its officers or agents, the article which it manufactured and sold was the occasion of harm to no one;" and finally says that "in no proper sense can the Electrical Bureau be regarded as a branch of the police power of the municipality."

In Mackey v. City of Vicksburg, 64 Miss., 782, when a child was injured by reason of the city leaving exposed a dangerous excavation on its private property it is held that "whatever conflict of authority may

exist upon the extent of the liability of a municipal corporation for the torts of its officers and agents, responsibility seems universally recognized where the injury arises from the improper use of its private property held for corporate and not public uses," citing 2 Dillon Mun. Corp., 985, and holding that the city was liable for failure to use ordinary diligence and care to keep said premises in safe condition.

In City of Greensborough v. McGibbony, 20 S. E. Rep., 37, a recent case by the Supreme Court of Georgia, it is held that a city is liable under the common law for negligence in failing to perform its duty in relation to exercising powers intended for the private advantage of the locality and its inhabitants.

In Sutton v. City of Snohomish, 39 Pac. Rep., 275, it is held the laying out and keeping in repair the streets of a city is not strictly a governmental duty, but it is primarily for the benefit of the inhabitants of the particular locality, and the duty to keep in reasonably safe condition is ministerial, and where the duty exists, it must be performed.

In Wilkins v. Village of Rutland, 25 Am. & Eng. Corp. Cases, 49 (Vermont), it was held that where the city owns an aqueduct for the supply of water to its inhabitants and permits a water-box to project beyond the surface of the highway, it is liable. The liability is not put upon the ground that it was an obstruction in the street, but is put on the ground that the city owning and managing the water system must keep in repair and use its property so as to not be liable to injure others.

The City of Philadelphia v. Gilmartin, 71 Pa. St., 154, was where the city in the operation of its water-works drew off, in time of drought, water from the Schulykill river, to be used and distributed by its system of works to the inhabitants, thereby lowering the water in the river so as to impede navigation. It was held that as the city was a vendor of water and engaged in the business for profit and its own advantage, the operation of the system was not a governmental function, but was a business enterprise of the city, and in the transaction of such business it was liable as an individual.

In Mulcairns v. City of Janesville, 67 Wis., 24, an employee of the city was killed in digging a cistern for the city as a part of its water system. It was held that the city was liable for the negligence of the agent of the city in the management and control of the work.

In Briegel v. City of Philadelphia, 19 Atl. Rep., 1038, it is held that a city is liable for damages occasioned by the negligent plumbing and drainage of a school building, whereby water and filth is deposited in neighboring cellars. This upon the doctrine that a municipal corporation owning property for public purposes must use it with the same care as individuals.

In Cleveland v. King, 132 U. S., 295, it is held that it is the duty of a city to keep its streets in order, and one injured in consequence of a neglect to so do has a right of action at common law for the damage he has sustained.

In Spangler v. City of San Francisco, 23 Pac. Rep., 1092, it is held

that the liability rests upon the city to keep its sewers in repair, and for failure to so do it would be liable.

In Bank v. City of Lowell, 26 N. E. Rep., 98, the city cut off the water from one to whom it was obligated to furnish, and suit was brought for the damages sustained. In defense it was urged that the city, in the conduct of its water system, was performing a public service, and could not be held liable. It was held that it rested under the implied duty to continue to furnish the water and was liable for its negligence in not doing so.

In Stock v. City of Boston, 149 Mass., 411, 21 N. E. Rep., 871, the city was under contract with the owner of a greenhouse to supply him with water for steam heating for his plants, in constructing a sewer in an adjacent street the city caused a supply pipe to be uncovered and negligently exposed to the cold, so that the water in the pipe froze and his water supply was cut off. It was held that the plaintiff was not bound to sue on the contract, but could sue as in tort, and that the city was liable for its negligence in exposing the pipe so that it could not furnish water.

In Oliver v. Worcester, 102 Mass., 490, 3 Am. Rep., 485, the city, in repairing a building belonging to it and used for municipal purposes, and also used in part as a source of revenue by being let for rent, which was situated on a public common crossed by foot paths cared for by the city and used by the public, dug a hole in the ground adjoining and negligently left it open and unguarded, so that the plaintiff fell in and was injured. It was held that the city was liable to an action at common law for the injury. The court in disposing of the case says: "The distinction is well established between the responsibilities of towns and cities for acts done in their public capacity in the discharge of duties imposed upon them by the Legislature for the public benefit, and for acts done in what may be called their private character, in the management of property or rights voluntarily held by them for their own immediate profit or advantage as a corporation, although in using, of course, ultimately to the benefit of the public. To render municipal corporations liable to private actions for omission or neglect to perform a corporate duty imposed by general law on all towns and cities alike, and from the performance of which they derive no compensation or benefit in their corporate capacity, an express statute is doubtless necessary. * * * But this rule does not exempt towns and cities from liability to which other corporations are subject, for negligence in managing or dealing with property or rights held by them for their advantage or emolument. Thus when a special charter, accepted by a city or town, or granted at its request, requires it to construct public works and enables it to assess the expense thereof from those immediately benefitted thereby, or to derive profit in its own corporate capacity from the use thereof, by way of tolls or otherwise, the city or town is liable, as any other corporation would be, for an injury done to any person in the negligent exercise of the powers so conferred."

In Barnes v. District of Columbia, 91 U. S., 540, it was held that the District of Columbia, as a municipal corporation, is liable for injuries sustained from defective streets, and that a corporation that voluntarily assumes duties is responsible for its negligence. In City of Seymour v. Cummins, 5 Law. Rep. Ann., 126; Hines v. Lockport, 50 N. Y., 236; Barton v. Syracuse, 37 Barb., 292, it is held that the duty to keep sewers owned by the city in repair is ministerial, and for a failure in this respect the city could be held liable to one injured.

In Aldrich v. Tripp, 23 Am. Rep., 434 (11 R. I., 141), the city owned the water-works, received rents for water, and contracted for the use and distribution of the water. In an action against the city for damages resulting from an unsafe highway, the damage being caused by a stream of water thrown from a city hydrant across the highway by the employes of the water commissioners, it was held that the water commissioners and their employes were the servants and agents of the city, and not public officers in the performance of a public duty, and that for their acts the city was liable; and that a city or town charged with a public duty in consideration of valuable privileges is liable to an individual who suffers special injury from a neglect of duty; and a city or town which derives a benefit and emolument from the exercise of powers conferred upon it is liable for the negligent or unskillful exerercise of those powers by its agents, or for the neglect of a duty which is imposed by or results from the exercise of them; and this case also states the principle that, while an act such as the erection and use of a public work may be legislative, yet if actually erected and not abandoned the duty to keep it in repair is ministerial.

Bailey v. Mayor of New York, 38 Am. Dec., 670 (3 Hill, 531), an instructive and leading case upon the liability of municipal corporations, was where the city was held liable for damages occasioned by the breaking of the dam across Croton river, erected by the city as a part of its water system. It was there held that a city in the prosecution and conduct of a work or business in which it was engaged for gain or advantage, although the public were benefitted by it, in which the State in its sovereign capacity has no interest, is answerable as a private corporation, although such works may be in the nature of great enterprises for the public good.

In Noonan v. City of Albany, 35 Am. Rep., 540, a city that negligently diverts water on to the property of the plaintiff is liable in damages.

In Smoot v. Mayor of Wetumpka, 24 Ala., 116, where a bridge was a part of a street, and became unsafe, and the city failed to destroy it as a nuisance or repair it, and damages were sustained by a traveler by reason of its defective condition, the court in holding the city liable, said: "The tendency of modern decisions is to hold corporations liable like individuals for tortious violations of duty not involving governmental powers, and to disregard the distinction which has sometimes been taken between what is termed misfeasance and non-feasance. - We

are of the opinion that there is, in such cases, no solid distinction be-
tween tortious neglect of a known, defined duty, which is of such char-
acter as not to involve governmental powers, and the performance of
such a duty in so unskillful and negligent a manner as to cause particu-
lar or extraordinary injury to another. The consequences to the party
injured are the same, whether they result from misfeasance or non-fea-
sance."

·In Rowe v. Portsmouth, 22 Am. Rep., 464 (56 N. H., 291), by neg-
ligence of the city, a public sewer became defective and water was
forced back upon plaintiff's premises and caused damages. It was held
that the city was liable for its negligence and that, in constructing its
sewers, it must use the same degree of care and prudence as an individ-
ual, and that, although a municipal corporation is not required to build
sewers, and to that extent its authority is legislative, yet if it have the
authority to build them, and voluntarily does so, it will be held liable
for its negligence or misfeasance in maintaining them. And, in effect,
it is also decided that where special powers or privileges are conferred
upon the city, which it may accept and undertake as a corporate right,
but are not imposed by statute, as a general duty alike resting upon all
cities, for acts of negligence arising out of these matters it would be
liable.

In Memphis v. Lasser, 9 Humph., 757, the city, through its mayor
and aldermen, caused to be dug in the street a cistern to be used as a
part of water system to be used in extinguishing fires. It was negli-
gently left uncovered and the plaintiff fell into it and was injured. It
was held that the city was liable.

In City of Petersburg v. Applegarth, 26 Am. Rep., 358 (23 Grat.,
321), the city owned and operated a wharf for the use of which it was
allowed charges. A vessel, in approaching, was injured. It was held
that the operation of the wharf was not a governmental function, but a
business carried on by the city in its corporate capacity, and that the
city rested under the duty to keep it and the approach thereto in repair,
and for its failure to so do it would be negligent, and that the duty in
this respect was ministerial.

In City of Logansport v. Wright, 25 Ind., 515, it is held that where
the city has authority to construct a work within the exercise of its gen-
eral powers it is a discretionary and legislative act, but the prosecution
of the work and keeping it in repair are ministerial duties, and that
when the work is for the corporation the same liability for negligence
exists as in case of individuals.

In City of Montgomery v. Gilmer, 33 Ala., 129, it is held that a city,
in the construction of its sewers, acts ministerially and is liable for its
negligence in this respect.

In Carrington v. St. Louis, 89 Mo., 209, 58 Am. Rep., 109, it is held
that a city is liable for the negligent use of its property, the same as
private corporations. The injury in this case arose out of the negli-
gence of the city in leaving open a trap door opening into a building

used and occupied by the police commissioner of the city. The city was held liable.

In Field v. Town of West Orange, 2 Atl. Rep., 236, a town, in making street improvements, caused surface water to be turned and collected upon plaintiff's premises. It was held liable.

In Lloyd v. Mayor of New York, 5 N. Y., 374, it was held that the keeping sewers in repair was a ministerial duty, and that sewers were not for the public governmental purposes of the corporation, but that they were constructed and used in its private corporate capacity.

In Jones v. City of New Haven, 34 Conn., 1, the plaintiff was injured by reason of a decayed limb falling from a tree, at a time when the city, by special authority from the Legislature, had assumed control over the trees in the public square and streets of the city. The city negligently allowed the dead limb to remain upon the tree. It was held that the city was liable. It was held that the city, in accepting the provisions of the charter that conferred a privilege upon it, not for the general good of the public at large, but a privilege granted to it in its corporate capacity, which had assumed the performance of the right, rested under the duty to exercise care to properly perform the service, and that such duty was ministerial in character, and not governmental or discretionary.

In City of Denver v. Rhodes, 13 Pac. Rep., 730, the damages were occasioned by the city obstructing a drain when laying a sewer pipe. It was contended that the city, in constructing the sewer, was engaged in a public work for the public benefit, and therefore was not liable. The court, in holding the city liable, in passing upon this question says: "In the nature of things this work could not benefit the general public or the State, but the city only," and that the work was authorized by an act of the Legislature does not affect the question, and further holds, that the city, in such a case, is liable, like an individual, for its negligence, whether of acts of commission or omission, and that while right to establish the works are judicial or discretionary, yet if the city has established them, the duty to keep in repair is ministerial.

In Rhodes v. City of Cleveland, 36 Am. Dec., 82, the city in cutting ditches caused a part of plaintiff's land to be washed away. In holding the city liable the court says: "That the increase of corporations and the business which they conduct makes it necessary that the courts meet these expanding powers by an extension of the limits of their liability; and if the city in the scope of its authority should work a wrong to another it should be held liable.

In Gilluly v. City of Madison, 53 Am. Rep., 299, it was held that a city was liable for suffering its sewers to remain out of repair.

In City of Jacksonville v. Lambert, 62 Ill., 520, it is held that a city is liable when, by its sewers, it places upon plaintiff's premises foul and offensive matter.

In Seifert v. City of Brooklyn, 54 Am. Rep., 665, the city constructed sewers which were insufficient to carry off the sewage turned into them,

and thereby overflowed plaintiff's land. It was there held that the city was liable, and that, while the duty to erect sewers was discretionary, yet, if the work was undertaken, it must be with due care, and that the city rested under the duty to keep them in repair, and that such duties are ministerial.

In Bates v. Westborough, 151 Mass., 179-183-184, it is held that the duty to keep sewers in repair is ministerial, and that the interest of the town in sewers is distinct from a public interest, and the town will be held liable for its negligence.

In The Giovanni v. City of Philadelphia, 59 Fed. Rep., 303, it was held that a city which, pursuant to its charter powers, engages in the business of towing vessels, is liable for a collision caused by the fault of its vessels. The doctrine that the functions performed were for the benefit of the whole public, consequently it was not a corporate act, but one of a public governmental nature, was held not applicable, and as the city voluntarily engaged in the business it must be held liable as an individual.

In Greenwood v. Town of Westport, 60 Fed Rep., 561, the town had voluntarily assumed the operation of a drawbridge over a navigable stream, and by reason of the failure to exercise ordinary care to place the draw properly, so that an approaching vessel could enter and pass, it was delayed and by a fall of tide it could not pass, and thereby was carried away by the ebb tide and struck bottom and sank. It was held that the town having voluntarily assumed the operation of the draw, it rested under the duty to perform the service in a careful manner and to exercise the degree of care proportioned to the responsibility assumed. In the course of the opinion, pages 570-571, it is said: "In voluntarily assuming such undertaking the town is held to impliedly contract for the exercise of due care, and that it will respond in damages resulting from negligence therein. City of Galveston v. Posnainsky, 62 Texas, 118. "Public governmental duties are such as pertain to the administration of general laws for the benefit and protection of the whole public, the discharge of which is delegated or imposed by the State upon the municipal corporation. If such duty is granted or imposed upon the municipality as a public instrumentality of the State, for public purposes exclusively, it belongs to the corporate body in its public or municipal character. There is no mode by which to determine whether a power or duty is governmental or not except to enquire whether it is, in its nature, such as all well ordered governments exercise generally for the good of all, and one whose exercise all citizens have a right to require to be by municipal agency, and whether it has ever been assumed or imposed as such by the government of the State and would have been exercised by the State if it had not been by the city. Tested by these criteria the extinguishment of fires is not a public governmental duty." Chief Justice Butler in Jewett v. New Haven, 38 Conn., 389. The court held that operating the draw was not a public governmental duty and that the town was liable.

In Hand v. Brookline, 126 Mass., 325, a recovery was granted against the town for damages sustained by reason of plaintiff's house being injured on account of the negligence of the town in the construction of its water pipes. The court says: "The cause of action set forth in this court is not the omission to perform the duty imposed by general laws upon all cities and towns alike, of keeping the highways in repair; but it is the neglect in the construction of works which the town had been authorized by a special statute, voluntarily accepted, to construct and to receive profits from, just as a private corporation might. For a neglect in the manner of constructing such works, by which injury is caused to a person or property, a town is just as liable as a private corporation or individual,"—and holds that such liability exists at common law.

In Town of Suffolk v. Parker, 52 Am. Rep., 641, it is held that a town is liable in damages for maintaining a market house that is a nuisance.

In McCarthy v. City of Syracuse, 46 N. Y., 196, the damages were occasioned by a defective sewer. It was held that the duty to keep the sewer in repair was ministerial, and that the negligent omission upon the part of the city in this respect rendered it liable to the individual who was damaged by reason thereof. And the principle is also announced that when the city accepts the benefit of these charter privileges it rests under implied contract and duty that it will perform them with due diligence.

In City of Fort Wayne v. Coombs, 57 Am. Rep., 82, it is held that the city rests under the duty to properly maintain its sewers, and when one connects his premises, for his private benefit, with the sewer the city owes him the duty to exercise care in maintaining the sewer in proper condition.

In Weed v. Borough of Greenwich, 45 Conn., 182, it is held that a grant of power to a town to remove obstructions to its highway and nuisances was for its own advantage, and not for the benefit of the public, and that removal of such encroachments was the exercise of a privilege, and not the discharge of a governmental duty.

In Davenport v. City of Hannibal, 18 S. W. Rep., 1123, it was held that a city was liable for personal injuries sustained by a pedestrian at night by reason of its failure to maintain a proper light in the vicinity of a defect in its street.

In Western Saving Fund v. Philadelphia, 31 Pa. St., 175, and another case between same parties, same report, 185, it is held that the city supplying its inhabitants with gas was a matter of corporate business, and not the exercise of a public governmental function.

In Child v. Boston, 4 Allen, 41 and 52, it is held that after a sewer is constructed by the city and is the property of the municipality it must keep it in repair, and for neglect so to do it would be liable.

In Worden v. New Bedford, 131 Mass., 23, it is held that a town

which owns, for municipal purposes, a town hall and rents out a part of the building, becomes liable for its negligence as an individual.

In Watson v. Town of Needham, 24 Law. Rep. Ann., 287 (a recent decision by the Supreme Court of Massachusetts), it was held that a town that contracted to furnish water from its system to a greenhouse, and which contract the city violated, would make the city liable.

Pittsburg v. Grier, 22 Pa. St., 63, is an interesting case illustrating the liability of cities and the connection between their negligence and the injuries sustained, and in these respects is applicable to the case at bar. That eminent lawyer, Judge Jerry Black, speaking for the court, says: "The city being in possession of the wharf, exercising an exclusive supervision over it, and receiving tolls for its use, is it a violation of the duty which the corporate authorities owe to the public to let it get out of repair? The affirmative of this was decided in an action on the case against the Mayor and Burgesses of Lyme Regis, 3 Barn. and Adol., 77, and by the Supreme Court of New York in several cases (11 Wend., 543; 21 Wend., 115). The general rule undoubtedly is that those who have a public work under their control, are bound to repair it, and the force of this obligation is still further increased when it yields its possessors a revenue. The cases above cited show that this principle applies to public ports in the possession of a city, as well as canals, bridges and other highways in the hands of individuals and private corporations. There is no reason, nor no authority, for any distinction. The interests of commerce imperatively require that the place to which vessels are invited to come should be in a safe condition. Nobody but the city of Pittsburg can possibly keep her port in order, for she alone has it in charge, and permits no one else to meddle with it; and it is justice that she should take the burden, because she receives the only direct profit which it yields.

"How is the performance of this duty to be enforced, and how shall it be punished if neglected? Lord Tenterden (3 Barn. and Adol., 77) says by indictment for the public wrong, and by action for the special injury to individuals. The same answer is given to the question by Judge Nelson (11 Wend., 534), and by Judge Cowan (21 Wend., 115), and the former sustains his opinion by a citation of numerous authorities.

"It is a mistake to suppose that the right of action is based on the city ordinances, or that the wrong committed consists in a neglect to enforce them. The injury is a violation of the duty which arises out of the control which the city has over the port, and her receipt of tolls from the vessels which come into it. It is no matter whether that duty remains unperformed because she has no ordinances on the subject, or because having ordinances, she neglects to enforce them. The responsibilities of the corporation are the same in either case. The ordinances passed from time to time on the subject are strong evidence to show how and by whom the port is controlled and regulated; but if the same fact had been otherwise proved, it would have had the same effect.

"For reasons which will be apparent presently, we do not think it necessary or proper to comment on each minute point of the criticism to which the counsel for the plaintiff in error has subjected the declaration. But the argument that the form of the action has been misconceived, and that it should be assumpsit instead of case (technical though it be), is on a question important enough in practice to demand some notice. The rule deducible from the authorities is that, when the plaintiff has suffered injury from the neglect of a duty which the defendant has impliedly promised to perform, the action may be either way. Thus case was sustained against an attorney for neglecting to recover a debt (6 Pa. St., 361), and against two owners of a stage coach for an injury to a passenger (4 Watts & Ser., 179). In the latter case it was said that the plaintiff had his choice to bring assumpsit on the contract, or case as for a breach of duty. The same point had been previously decided the same way by this court (6 Watts, 10), as well as in England (12 East, 534). It is not open to the slightest doubt.

"The point which comes more near than any other to being a substantial defense is that the destruction of the plaintiff's boat was so remote a consequence of the negligence complained of that no recovery ought to be allowed. It is certainly true that compensation for an injury can be demanded only from those whose acts and omissions have directly caused it. We cannot link a series of accidental events together, and follow the chain back as far as we can connect it. The law will not calculate the propulsion of causes on causes, and make him who set the first in motion liable for the damage produced by all. But the application of the maxim, causa proxima non remota spectantur is often very difficult. The books contain no exact rule to determine what is a remote and what is a proximate cause. Each case seems to have been decided as it arose on its own special circumstances. In Morrison v. McFadden, 5 Clark, Pa., 23, the lameness of the horse was so palpably not the cause of the disaster, and the breaking of the dam by which the boat was swept away was so clearly the true, and in legal contemplation the only cause, that the question there was very simple and plain. So, also, it was easy enough to decide, as Lord Ellenborough did in Livie v. Janson, 12 East, 648, that when a ship at sea is so damaged by a storm, and her rate of sailing so reduced, that she is unable to escape the cruisers of a public enemy, and thus comes to be taken, the loss is by capture, and not by perils of the sea. In both these cases the connection of the remote with the immediate causes was merely fortuitous, and the former might very well have happened without the latter. But a cause is not too remote to be looked to, merely because it produces the damage by means of intermediate agency. Where the injury was the immediate consequence of some peril to which the suffering party was obliged to expose himself in order to avoid the one for which he sues, it is proximate enough. The familiar doctrine of marine law which requires the payment of general average, is an instance of this. So if a vessel, insured only against the

barratry of the master, is exposed to capture by a barratrous deviation, the underwriter is liable on the ground that the deviation occasioned the loss (Cowper, 153); and this, though there was no immediate connection between the deviation and the capture (1 Johns., 229). Where the barratry consisted in cruising contrary to orders, and the cargo was lost in a storm, which would not have been encountered but for an attempt to take a prize into port, the violation of the orders, and not the storm, was declared to be the cause to which the loss was referable (6 T. R., 379). A ship was captured, and after being detained for some time, was allowed to proceed, but, during the detention, the port to which she was destined was closed by a blockade, and it was held that the loss of the voyage was a consequence of the capture, though it would have been accomplished except for the blockade (9 East, 283). In a case very nearly similar, the same doctrine was adopted and laid down by this court (5 Binn., 412). A ship insured against sea risks is compelled to put into a port where funds to repair her can be had only by drawing bills at a heavy discount; the underwriters are liable for this sacrifice as a consequence of the peril insured against. And the owners of a cargo insured against perils of the sea, may recover from the insurers for the loss of so much as is plundered by the inhabitants of a country where the ship is driven ashore in tempestuous weather (Stevens on Average, 155).

"All these losses were occasioned by causes greatly more remote than that which is here alleged to have produced the wreck of the plaintiff's boat. The negligence of the city authorities in leaving a pile of pig iron on the wharf made it necessary for the Mary Ann to back out into the stream in order to avoid immediate destruction. If she had not done so, the defense would doubtless have been set up that she was mismanaged by those who had charge of her. To prevent her from settling down on the iron as the water sunk, by which she must have inevitably been broken in two, she was shoved out and exposed to another danger, not then apparent, but in its results equally disastrous. How this can be called a remote consequence in the face of the authorities I have cited, is not very easy to see. It followed as an absolute necessity from the effort to get clear of the direct danger. The defendants were bound to furnish the plaintiffs with a secure port. They ought to have performed that duty with vigilant fidelity. But it was done in such a manner that they might as well have received the fee, and then refused the boat a landing altogether. They are held to a responsibility at least as strict as if they had been insurers of the vessel against all dangers from which a well regulated port in good condition would have saved her. Who can doubt that she was wrecked simply because she had not a good landing place.

"It is said, however, that though this part of the wharf was not safe, other parts were; and if the master of the boat chose to adopt a dangerous place when he might have had another which was secure, he brought the disaster on himself. But he had a right to land at any part of the

wharf.   He chose the place most convenient for discharging his cargo. He had the faith of the city pledged that the place he anchored at was one where his vessel might lie as securely as at any other.   If, therefore, it suited him better in other respects, he had a right to take it.

"It is argued that the destruction of the boat was a consequence which the agents of the city could not have foreseen as likely to occur, and, because they did not expect it, they are not answerable for it. But it is not the law that men are responsible for their negligence only to the extent of their injuries which they knew would result from it.   If it were, there could be no recoveries except for malicious wrongs. This injury was produced by the iron on the wharf.   The question in the cause was whether the loss should fall on the city, whose duty it was to remove the nuisance, and who had the right and power to do it, or on the owners of the boat, who were under no such obligation.   Every principle of law and justice requires that it should be borne by the former and not by the latter party."

There are many of the English cases in keeping with some of the American cases cited, prominent among which are Henly v. Mayor of Lyme, 5 Bing., 91, 3 Moore & P., 278, 3 Barn. & Ad., 77, and same case in House of Lords, 2 Clark & Fin., 331; Foreman v. Mayor of Canterbury, L. R., 6 Q. B., 214; White v. Hindley Local Board, L. R., 10 Q. B., 219; Whitehouse v. Fellows, 10 C. B., 765; Brownlow v. Metropolitan Board of Works, 13 C. B., 768; Coe v. Wise, 5 Best & S., 440, L. R., 1 Q. B., 711; Winch v. Conservators of Thames, L. R., 7 C. P., 458, and L. R., 9 C. P., 378; Cowley v. Mayor of Sunderland, 6 Hurl. & N., 565; Scott v. Mayor of Manchester, 1 Hurl. & N., 59, 2 Hurl. & N., 210; and Mersey Docks v. Gibbs & Penhollow, L. R., 1 H. L., 93, 11 H. L. Cas., 686, 3 Hurl. & N., 164, and 7 Hurl. & N., 329.

The last two cases cited indicate the tenor of the others.   In Scott v. Mayor of Manchester the municipal corporation was empowered by act of parliament to construct gas-works and to supply the inhabitants with gas, and to sell and dispose of the coke and gas for a consideration, and the profits were to be applied to the improvement of the town.   In effect, it was held that the work and enterprise was not of a public governmental nature, and was a business for the benefit of the corporation, for which the city in the negligent conduct thereof would be liable.

In Mersey Docks v. Gibbs & Penhollow the members of the town council of Liverpool were formed into a public corporation for the control of the docks on the water front of the city.   They were empowered to make and maintain the docks for the use of the public, charging tolls and rates for such use.   The revenues arising were to be applied to public purposes.   A mud bank was negligently suffered to remain in the docks, upon which a vessel was injured.   In effect, it was held that the business being conducted by the public corporation in its business capacity, for its advantage, it was liable, and that it rested under the duty to all who may have occasion to use the docks to keep them and the approaches in repair.

We are not unmindful of what is said by the Supreme Court of this State in House v. Houston Water-works, 31 S. W. Rep., 184, but the questions involved in this appeal were not before the court in that case, and what is there said that tends to have any bearing upon the question of liability here is dicta. It is possible that the Supreme Court in this way intended to outline the policy that should guide it if the question ever came before it. But the question presented here was not authoritatively decided there, and until the Supreme Court decides otherwise, we will dispose of this, as well as other cases, in accord with the principles we think govern it. The court in that case cites as authority section 975, Dillon, Munic. Corp.; Wright v. City Council of Augusta, 78 Ga., 241; Vanhorn v. City of Des Moines, 63 Iowa, 447; and Hays v. City of Oshkosh, 33 Wis., 318. These authorities we do not think control this case. The section of Dillon cited relates to non-liability of municipal corporations for the acts of its officers, a question not involved in this case or the one in which the section is cited as authority.

The case of Wright v. City Council of Augusta, 78 Ga., 241, is in some of its main features distinguishable from this case. There it was in part sought to hold the city liable for the neglect of duty of certain officers, as well as the failure to furnish water, and it did not appear that the city gained any profit or advantage in operating its water-works, and the case, in effect, admits that for the negligence of the municipal corporation in a corporate business it would be liable, as an individual. And the principle reason it gives for denying liability in case of property destroyed by fire is that to admit it would cause serious financial embarrassment to municipal corporations, and admits that those decisions that agree with it are principally based on that reason.

Vanhorn v. City of Des Moines, 63 Iowa, 447, is not like this case. There the effort was to hold the city liable for the negligence of a water company, and it did not appear, as here, that the city was engaged in furnishing water for its advantage and gain, and that it rested under any duty or obligation to the plaintiff that it would do so.

The case of Hays v. City of Oshkosh, 33 Wis., 318, is different from this case, in that there the attempt was to hold the city liable for the negligence of the fire department, which there, as elsewhere, are held to be officers and not servants of the city, and in that case it did not appear that the city was engaged in furnishing water as a corporate business for its advantage.

In conclusion, we may say that the liability admitted by those authorities which are cited in support of our views, with numerous others in the same line, in the cases of negligence of cities and towns in the control of their streets, sewers, docks and other works conducted by the cities and towns for corporate purposes, and the reasons there stated, are applicable to cases of this character, and there is no solid reason for distinguishing this case from those of the other classes. If we keep in view the principles decided by these cases and hold that they declare the correct doctrine, then there only remains the doctrine of stare de-

cisis upon which to rest the later line of cases, which hold cities and towns not liable for negligence arising from the management of their water systems. In the cases of this character, where reasons for the ruling are given, they are at variance with the principles decided in the authorities we have noticed, and in a number of such cases no reasons are stated, but the courts that rendered the opinions were simply content with a reference to other cases that had so decided, resting their decisions in part evidently upon stare decisis. But this rule does not influence us, as we have no authoritative decisions in this State upon this subject, and, this being the case, we feel at liberty to rest our decision upon what we regard as the principles of law that govern the rights of the parties. If a private water company engaged in the service of supplying water to those with whom it occupied a contractual relation, either by express agreement or by the implied duty that rested upon it by reason of its relation to such parties, would negligently violate its duty, and thereby loss should result, there should be no doubt about its liability in such cases. The principles of law that govern in other cases in which a failure to perform a service in a reasonably careful manner results in loss to one to whom this duty is either expressly or impliedly owing, ought to apply to such water companies. And if this is true the same principles should govern the contract and liability of a city when engaged in a like business.

Judgment reversed and cause remanded.

*Reversed and remanded.*

Decided April 22, 1896.